IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL ADVOCATES,** an Oregon non-profit corporation,<br><br>                    Plaintiff,<br><br>   v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br><br>                    Defendant. | NO. 20-cv-01362<br><br>**COMPLAINT**<br>Pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 |

## INTRODUCTION

1.     This is an action against the U.S. Environmental Protection Agency ("EPA") brought by Plaintiff Northwest Environmental Advocates ("NWEA") under the Administrative Procedure Act ("APA"). Through this action, NWEA seeks to force EPA to comply with its duty to update the State of Washington's woefully outdated and inadequate water quality criteria that are intended to protect aquatic life from toxic pollutants. Washington has not adopted new or revised aquatic life criteria for many toxic pollutants for more than twenty years and many of its existing criteria are significantly less protective than EPA's recommended criteria for these

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

pollutants. Washington and EPA have known for years that continued use of the state's outdated toxics criteria violates the Clean Water Act and poses a risk of harm to species that are listed as threatened or endangered under the Endangered Species Act ("ESA"), including Chinook salmon and Southern Resident killer whales. Yet neither Washington nor EPA has taken any action to update these criteria.

2.      The Clean Water Act requires each state to develop, and every three years review and update if appropriate, water quality standards to "protect the public health or welfare[.]" 33 U.S.C. §§ 1313(c)(1), 1313(c)(2)(A). During this process, known as "triennial review," states must adopt water quality criteria—part of a water quality standard—for toxic pollutants for which EPA has published recommended criteria. *Id.* § 1313(c)(2)(B). When a state fails to meet these requirements, or when EPA determines that a state's standards are inadequate, EPA must promulgate standards for the state's waters. *Id.* §§ 1313(c)(3), (4). Because water quality standards form the basis for many regulatory decisions under the Clean Water Act, it is critical that states and EPA get the standards "right."

3.      On October 28, 2013, NWEA submitted a Petition to EPA pursuant to the APA, 5 U.S.C. §§ 553(e) and 555(e), requesting that EPA take the following actions: (1) determine that Washington has failed to adopt aquatic life criteria as required by Clean Water Act section 303(c)(2)(B) in each triennial review of its water quality standards conducted since 1992; and (2) promulgate federal regulations applicable to Washington, pursuant to Clean Water Act section 303(c)(4), setting forth new and revised aquatic life criteria for toxic pollutants as necessary to

**COMPLAINT** - 2

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

meet the Clean Water Act's requirements.[1]

4.      On May 31, 2017, EPA denied NWEA's Petition.

5.      NWEA requests the Court: (1) declare that EPA, in denying NWEA's Petition regarding new or revised aquatic life criteria, acted arbitrarily, capriciously, in abuse of its discretion, and not in accordance with law, within the meaning of APA section 706, 5 U.S.C. § 706(2)(A); (2) vacate EPA's denial of this portion of NWEA's Petition and remand it to EPA for further consideration; (3) order EPA to make a new decision on this portion of the Petition by a date certain; and (4) award NWEA its costs of litigation, including its litigation expenses and reasonable attorneys' fees.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706, which provides for judicial review of final agency actions for which there is no other adequate remedy in a court; pursuant to 28 U.S.C. § 1331, because this case presents a federal question; pursuant to 28 U.S.C. § 1346, because this is an action against a federal defendant; and pursuant to 28 U.S.C. §§ 2201–2202, which provide for declaratory and further relief. An actual, justiciable controversy exists between NWEA and EPA. The requested relief is proper under 5 U.S.C. § 706.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) (venue in action against officer of the United States) and LCR 3(e) because a substantial part of the events or

---

[1] NWEA's Petition also asked EPA to take similar actions related to Washington's human health criteria for toxic pollutants. NWEA is not challenging EPA's denial of the Petition with regard to human health criteria, and as such will not refer to human health criteria in this Complaint except as relevant to EPA's decision to deny the portion of NWEA's Petition regarding Washington's outdated aquatic life criteria.

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax. (206) 264-9300

omissions giving rise to the claims occurred in Seattle, where EPA's Region 10 administrative office is located.

## PARTIES

8.      The Plaintiff in this action is NORTHWEST ENVIRONMENTAL ADVOCATES ("NWEA"). Established in 1969, NWEA is a regional non-profit environmental organization incorporated under the laws of Oregon in 1981 and organized under section 501(c)(3) of the Internal Revenue Code. NWEA's principal place of business is in Portland, Oregon. NWEA's mission is to work through advocacy and education to protect and restore water and air quality, wetlands, and wildlife habitat in the Northwest, including Washington, and the nation. To this end, NWEA promotes informed citizen involvement in the protection of the Northwest's waterways. NWEA employs advocacy with administrative agencies, community organizing, strategic partnerships, public record requests, information sharing, expert analysis, lobbying, education, and litigation to ensure better implementation of the laws that protect and restore the natural environment. NWEA has participated in the development of Clean Water Act programs in Washington for decades.

9.      Several of NWEA's members reside near, visit, use, and/or enjoy rivers, streams, estuaries, wetlands, marine, and other surface waters throughout Washington, Puget Sound, the Pacific Ocean, and their many tributaries. These members regularly use and enjoy these waters and adjacent lands and have definite future plans to continue to use and enjoy these waters for recreational, subsistence, scientific, aesthetic, spiritual, commercial, conservation, educational, employment, volunteer, restoration, and other purposes. These NWEA members derive recreational, scientific, personal, professional, and aesthetic benefits from their use and enjoyment of Washington's waters and the fish and aquatic-dependent wildlife that rely upon Washington's

**COMPLAINT - 4**

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

waters for habitat-related functions. Many of them also enjoy recreational fishing for salmon and trout species in those waters. Others would like to fish and consume fish, but they decline to do so because of fear of the toxic pollutants in the waters.

10.     Beyond fishing, some of NWEA's members enjoy clamming, crabbing, swimming, wading, boating, photography, bird- and wildlife-watching, taking their children to and generally interacting recreationally, spiritually, and in terms of their employment, with fresh and salt water systems within Washington, many of which are designated critical habitat for threatened and endangered species that depend on clean, toxic-free waters. Further, NWEA and many of its members are active in working for restoration of salmon populations and salmon habitat, and in promoting appreciation and protection of salmonid species, and the species that rely upon salmonids as prey, such as orca whales.

11.     EPA's arbitrary and illegal denial of NWEA's Petition harms NWEA and its members because it allows for the continued use, in Washington's regulatory programs, of outdated water quality criteria for toxics that do not adequately protect aquatic life, including threatened and endangered aquatic and aquatic-dependent species. For example, the state issues industrial and municipal wastewater discharge permits pursuant to the National Pollutant Discharge Elimination System ("NPDES") established by Clean Water Act section 402, and derives the facility-specific discharge limitations in those permits based largely on the applicable water quality criteria. Washington's outdated and unprotective toxic criteria lead to less stringent discharge limitations for individual facilities, which, in turn, results in more toxic water pollution in the state's surface waters than the Clean Water Act allows.

12.     Numerous other state or federal regulatory programs rely upon these water quality criteria for toxic pollutants, including the issuance of NPDES permits to federal and tribal facilities

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

in Washington by EPA; the identification of so-called "impaired waters" under Clean Water Act section 303(d); the development of clean-up plans called Total Maximum Daily Loads ("TMDLs") intended to bring impaired waters back into compliance with water quality standards; the state's establishment of management practices to control nonpoint source runoff to meet water quality standards; and the state's issuance of water quality certifications pursuant to Clean Water Act section 401 for projects with federal permits to ensure compliance with water quality standards. Washington's outdated and unprotective toxic criteria thus render Washington's programs and policies intended to protect and improve water quality less effective, resulting in the discharge of more toxic pollutants to the state's surface waters and thereby harming NWEA and its members.

13.     NWEA and its members reasonably fear that many of Washington's water quality criteria for toxics do not protect aquatic life and aquatic-dependent wildlife. The continued use of such unprotective criteria impairs the recreational, aesthetic, and other interests of NWEA and its members in a number of ways. Washington's native fish and shellfish populations, including threatened and endangered species, are adversely affected when water quality criteria are not sufficient to maintain water quality at levels that protect these species and their habitat. Adverse effects to Washington's native fish populations are directly related to degradation of water quality throughout the state, including the presence of toxic pollutants, both individually and in combination with other forms of water pollution, such as high temperatures and low levels of dissolved oxygen. For example, native fish and wildlife populations are directly harmed by toxic pollution from past, present, and future industrial and urban sources. Harmful sources of pollution would be addressed through the use of adequately protective water quality criteria in the state's Clean Water Act regulatory programs.

14.     The aesthetic, recreational, spiritual, scientific, subsistence, and other benefits

COMPLAINT - 6

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

derived by NWEA's members from their use of Washington's waters are and will continue to be diminished by the presence of toxic pollutants at the unprotective levels currently allowed by Washington's criteria and by EPA's refusal to promulgate new, more stringent, and scientifically-sound water quality standards that, if properly implemented, will lead to reductions of those pollutants. The harm to native fish and wildlife populations has diminished NWEA's members' recreational, aesthetic, and employment opportunities related to these species. For example, some of NWEA's members derive these benefits by fishing in Washington. These members fish in rivers, streams, and lakes in Washington and areas of Puget Sound, and would fish for certain species but for their protected status under the ESA and their relative scarcity, which these members reasonably believe is due in part to the presence of toxic pollutants in Washington's waters that negatively affect these species.

15.    NWEA's members would derive more benefits from their use of Washington waters and adjacent lands if Washington had more protective aquatic life water quality criteria for toxic pollutants because there would be less toxic pollution in Washington's waters and thus a reduction of the adverse effects that such pollution has on water quality, aquatic life, and aquatic-dependent wildlife, including fish and wildlife listed as threatened or endangered under the ESA. By arbitrarily and unlawfully denying NWEA's Petition, EPA is failing to ensure that Washington's water quality criteria protect the beneficial uses of Washington's waters, including threatened and endangered species and their habitat, as required by the Clean Water Act.

16.    The relief requested in this lawsuit can redress these injuries because it will help ensure that water quality criteria used and implemented in Washington's regulatory pollution control programs are sufficiently protective of fish, wildlife, and threatened and endangered species and their habitat. These would, in turn, improve NWEA's members' use and enjoyment of

**COMPLAINT** - 7

Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax. (206) 264-9300

Washington's waters and the species that depend upon the quality of those waters. The longer Washington's unprotective criteria remain in place, the longer NWEA and its members' interests continue to be harmed by both the levels of toxic pollutants that Washington and EPA, through the criteria, allow to be discharged, and the Clean Water Act implementation programs, policies, and practices that are based on these unprotective criteria.

17.     The above-described interests of NWEA and its members have been, are being, and, unless the relief prayed for herein is granted, will continue to be affected by EPA's disregard of its statutory duties under the APA and Clean Water Act, and by the harm to water quality and fish and wildlife and their habitat that results from EPA's inaction.

18.     Defendant U.S. ENVIRONMENTAL PROTECTION AGENCY ("EPA") is the federal agency charged with administering the Clean Water Act , responding to NWEA's Petition, approving or disapproving state toxics criteria under Clean Water Act section 303(c)(2), 33 U.S.C. § 1313(c)(2), and promulgating new or updated criteria when it determines that a revised or new standard is necessary to meet the requirements of the statute under Clean Water Act section 303(c)(4)(B).

## LEGAL BACKGROUND

### The Clean Water Act and Water Quality Standards

19.     The  Clean Water Act is the principle federal statute enacted to protect the quality of the waters of the United States. The primary goal of the Clean Water Act is to eliminate the discharge of pollutants into navigable waters entirely; it also establishes "an interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife," 33 U.S.C. § 1251(a)(1)–(2), and sets a "national policy that the discharge of toxic pollutants in toxic amounts be prohibited." *Id.* § 1251(a)(1).

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

20.     To meet these statutory goals, the Clean Water Act requires states to develop water quality standards that establish, and then protect, the desired conditions of each waterway within the state's regulatory jurisdiction. *Id.* § 1313(a). Water quality standards must be sufficient to "protect the public health or welfare, enhance the quality of water, and serve the purposes of [the Clean Water Act]." *Id.* § 1313(c)(2)(a). Water quality standards establish the water quality goals for a waterbody. 40 C.F.R. §§ 131.2, 131.10(d).

21.     Water quality standards must include three elements: (1) one or more designated beneficial uses of a waterway; (2) numeric and narrative criteria specifying the water quality conditions, such as maximum amounts of toxic pollutants, maximum temperature levels, and the like, that are necessary to protect the designated uses; and (3) an antidegradation policy that ensures that beneficial uses dating to 1975 are protected and high-quality waters will be maintained and protected. 33 U.S.C. §§ 1313(c)(2), (d)(4)(B); 40 C.F.R. Part 131, Subpart B. For waters with multiple use designations, the criteria must support the most sensitive use. 40 C.F.R. § 131.11(a)(1).

22.     There are two types of water quality criteria: criteria to protect human health, and criteria to protect aquatic life. The adoption of criteria for the protection of human health is required for waterbodies designated for public water supply and where catching fish for human consumption is considered an important activity included in a designated use. Unlike criteria for human health, the purpose of criteria for the protection of aquatic life is to protect fish, invertebrates, and other aquatic species that are the hallmarks of a healthy waterbody. The adoption of toxic criteria protective of aquatic life shall take into account "the usual or potential presence of the affected organisms in any waters, the importance of the affected organisms, and the nature and extent of the effect of the toxic pollutant on such organisms." 33 U.S.C. § 1317(a)(1).

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

23.     Aquatic life criteria are expressed in two forms: (1) acute criteria to protect against mortality and adverse effects of short-term exposure to a toxic chemical and (2) chronic criteria to protect against mortality and adverse effects as a result of long-term exposure to that chemical. Water quality criteria "must be based on sound scientific rationale and must contain sufficient parameters or constituents to protect the designated use." 40 C.F.R. § 131.11(a)(1). For example, criteria may need to be more stringent to protect threatened or endangered species than for species that are more common and, therefore, more resilient.

24.     States have the primary responsibility for reviewing, establishing, and revising water quality standards, including criteria, for those waters within their borders. *See* 33 U.S.C. § 1313(c)(1). Frequently, states rely upon EPA's recommended criteria issued as guidance under Clean Water Act section 304(a), wherein EPA is required to develop, publish, and revise from time to time, "criteria for water quality accurately reflecting the latest scientific knowledge [] on the kind and extent of all identifiable effects on health and welfare[.]" *Id*. § 1314(a)(1). These recommended criteria are based upon scientific data concerning the relationship between pollutants and their effects on human health and the environment, and EPA may not consider technological feasibility or economic impacts when it develops the 304(a) criteria.[2] Until a state adopts the recommended criteria, and EPA approves the criteria pursuant to section 303(c)(3), the recommended criteria have no regulatory effect. *Id*. § 1313(c)(3).

25.     The Clean Water Act identifies certain toxic pollutants as a high priority for

---

[2] *See* EPA, Water Quality Criteria Documents; Availability, 45 Fed. Reg. 79318, 79319 (Nov. 28, 1980) ("Under section 304(a)(1), these criteria are based solely on data and scientific judgments on the relationship between pollutant concentrations and environmental and human health effects. Criteria values do not reflect considerations of economic or technological feasibility.")

**COMPLAINT** - 10

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

regulation by establishing a list of "priority pollutants" in 33 U.S.C. § 1317(a)(1)." Once EPA has issued 304(a) recommended criteria for any of these priority pollutants, states are required to adopt their own numeric criteria for those pollutants "the discharge or presence of which in the affected waters could reasonably be expected to interfere with those designated uses" "whenever a State reviews water quality standards." 33 U.S.C. § 1313(c)(2)(B).[3]

26.     In addition, EPA policy allows, and in fact encourages, states to adopt statewide numeric criteria in their water quality standards for all toxic pollutants for which EPA has developed section 304(a) recommended criteria, regardless of whether the pollutants are known to be present in navigable waters within the state. State criteria may be *less stringent* than the recommended criteria *only if* the state demonstrates to EPA that they protect the designated uses and are based on "sound scientific rationale." 40 C.F.R. § 131.11(a). However, it is equally true that a state may not adopt the EPA-recommended section 304(a) criteria if those criteria are not adequate to protect that state's designated uses. *Id.*

27.     The Clean Water Act requires that at least once every three years, states "hold public hearings for the purpose of reviewing applicable water quality standards and, as appropriate, modifying and adopting standards." 33 U.S.C. § 1313(c)(1). This process is the aforementioned "triennial review." States must make the results of triennial reviews available to EPA. *Id.* If a state proposes to revise or modify any of its water quality standards, such revisions or modification must be submitted to EPA to determine whether they are consistent with the Clean Water Act's requirements, and EPA must either approve or disapprove them. *Id.* §§ 1313(c)(2)(A), (3). Since

---

[3] The list of priority pollutants has not been updated since 1977, and EPA acknowledges that the list is outdated. *See* EPA, Toxic and Priority Pollutants Under the Clean Water Act, https://www.epa. gov/eg/toxic-and-priority-pollutants-under-clean-water-act (last visited July 23, 2020).

**COMPLAINT** - 11

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

2015, the Clean Water Act's implementing regulations have required that if a state does not revise or modify criteria for which EPA has published new or revised section 304(a) recommended criteria as required by Clean Water Act section 303(c)(2)(B), then the state shall explain its reasoning when it submits the results of its triennial review to the EPA. 40 C.F.R. § 131.20(a).

28.     Following the state's submission, EPA must notify a state within 60 days if it approves the new or revised standards. *See* 33 U.S.C. § 1313(c)(3). If EPA disapproves the state's water quality standards, EPA must do so within 90 days and specify the changes that are needed to ensure compliance with the requirements of Clean Water Act section 303(c) and federal water quality standards regulations. *See id.*; *see also id.* § 1313(c)(4); 40 C.F.R. § 131.21. Where EPA determines that a new or revised standard is necessary to meet the requirements of the Clean Water Act, EPA must promptly prepare and publish proposed regulations setting forth the new or revised water quality standard. *See* 33 U.S.C. § 1313(c)(4)(B). Thus, even though the Clean Water Act allows the state to make the first attempt to set standards, the statute still requires significant EPA oversight and action.

29.     In addition, even when a state has not submitted a new or revised water quality standard to EPA for review and approval, the Clean Water Act requires that EPA "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard … in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of [the Clean Water Act]." 33 U.S.C. § 1313(c)(4)(B).

### *The Importance of Water Quality Standards*

30.     Water quality standards are the foundation on which the Clean Water Act is based. Among other purposes, water quality standards serve as the regulatory basis for establishing water quality-based controls for point sources of pollution, as required by Clean Water Act sections 301

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

and 306, 33 U.S.C. §§ 1311, 1316. *See e.g.*, 40 C.F.R. § 131.21(d) (explaining how water quality standards are used). A point source is a "discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel conduit, well … from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Point source discharges are regulated under National Pollutant Discharge Elimination System ("NPDES") permits that require point sources to meet both technology-based effluent limitations and "any more stringent limitation … necessary to meet water quality standards." *Id*. §§ 1311(b)(1)(C), 1342(a). Water quality standards are thus integral to the regulation of point source pollution.

31.     Water quality standards also are used to establish measures to control nonpoint source pollution. Unlike point source pollution, nonpoint source pollution is generally considered to be any pollution that cannot be traced to a single discrete conveyance. Examples include runoff from agricultural or forestry lands, on-site septic systems, and increased solar radiation caused by the loss of riparian vegetation. Congress did not establish a federal permitting scheme for nonpoint sources of pollution. Instead, Congress assigned states the task of implementing water quality standards for nonpoint sources, with oversight, guidance, and funding from EPA. *See, e.g.*, 33 U.S.C. §§ 1288, 1313, 1329. Even so, water quality standards apply to all pollution sources, point and nonpoint alike. "[S]tates are required to set water quality standards for *all* waters within their boundaries regardless of the sources of pollution entering the waters." *Pronsolino v. Nastri*, 291 F.3d 1123, 1127 (9th Cir. 2002) (emphasis in original).

32.     In addition to serving as the regulatory basis for NPDES permits and nonpoint source controls, water quality standards are the benchmarks by which the quality of a waterbody is measured. Waterbodies that do not meet applicable water quality standards, or cannot meet applicable standards after the imposition of technology-based effluent limitations on point sources,

**COMPLAINT** - 13

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

are deemed to be "impaired" and placed on a list of such waters compiled under Clean Water Act section 303(d)(1)(A) (known as the "303(d) list"). *See* 33 U.S.C. § 1313(d)(1)(A); 40 C.F.R. § 130.2(j). States must then develop TMDLs for all 303(d)-listed waters in order to establish the scientific basis for cleaning up water pollution that violates water quality standards.

33.     A TMDL is the total daily loading of pollutants for a particular waterbody or waterbody segment. *See* 40 C.F.R. § 130.2(i). TMDLs must be set at levels necessary to attain EPA-approved, *i.e.*, "applicable," water quality standards. *Id.* § 130.2(f); *see also id.* §§ 131.21(c), (d). The total amount of pollutants that may enter a waterbody while still meeting water quality standards is called the "loading capacity." *Id.* § 130.2(f). Like dividing a pie, TMDLs distribute portions of the total loading capacity to individual sources of pollution or sectors of pollution sources. These allocations include both "wasteload allocations" and "load allocations," for point and nonpoint sources of pollution, respectively. 40 C.F.R. § 130.2(i). The purpose of load and wasteload allocations is to allocate the total amount of pollution that may enter a waterbody between all sources of pollution, including both point and nonpoint sources of pollution, thereby restricting pollution inputs sufficiently to attain and maintain water quality standards.

34.     Although water quality standards are much more than the numeric criteria that states adopt and EPA approves, the regulatory actions taken by states and EPA—issuing NPDES permits, determining best management practices for nonpoint sources to meet water quality standards, identifying impaired waters, establishing TMDLs, and (for states alone) certifying that federal projects meet water quality standards under Clean Water Act section 401—most often rely on EPA-approved numeric criteria.

### *Judicial Review under the Administrative Procedure Act*

35.     Section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, provides a cause

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

of action to any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." A court must "hold unlawful and set aside agency actions, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). The Administrative Procedure Act further provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." *Id.* § 553(e). The denial of a petition is a "final agency action for which there is no other adequate remedy in a court" within the meaning of the Administrative Procedure Act. *Id.* § 704.

## **FACTUAL BACKGROUND**

### ***Toxic Pollutants and Aquatic Life***

36.     Toxic pollutants pose significant hazards to aquatic species in Washington's waters, particularly those species listed as threatened or endangered under the ESA. Toxic pollutants enter Washington's waters in a number of ways, including but not limited to stormwater runoff, discharges from industrial and municipal facilities, and nonpoint sources. Sediment contamination by toxic pollutants is also a serious problem in Puget Sound and throughout the state. While some naturally-occurring elements have some biological value to aquatic species in low concentrations, these elements are also devastating to aquatic life in exceedance of their biological tolerance. For example:

- Copper is toxic to aquatic organisms, with acute effects such as mortality, as well as chronic effects on their survival, growth, reproduction, brain function, and metabolism.

- Selenium is toxic to aquatic life. Chronic exposure to selenium in fish and aquatic invertebrates can cause reproductive impairments and adversely affect juvenile growth and mortality.

**COMPLAINT** - 15

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

- Acrolein is a bioconcentrating biocide, also used in the chemical industry, that is toxic to fish and other aquatic species, causing mortality, severe stress, and reduced growth.

- Cadmium has no biological benefit to aquatic animals, and has acute effects such as mortality, as well as chronic effects on growth, reproduction, immune and endocrine systems, development, and behavior in aquatic organisms.

37.     Recent formal consultations between expert fish and wildlife agencies and EPA pursuant to ESA section 7, 16 U.S.C. § 1536, in connection with the revision of water quality standards for many toxic pollutants by other West Coast states, for the same or similar species as are present in Washington waters, have identified these hazards. For example, in 2000, the U.S. Fish and Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") released a biological opinion on EPA's promulgation of toxic criteria for California, finding "jeopardy" for the toxic pollutants cadmium, copper, lead, nickel, zinc, chromium III, chromium VI, silver, selenium, pentachlorophenol, and mercury.[4] This was followed, in 2012, by NMFS's issuing a biological opinion finding jeopardy for EPA's approval of Oregon's cadmium, copper, aluminum, and ammonia criteria. Subsequently, in June 2015, FWS completed a biological opinion on EPA's 1996, 1997, and 2005 toxic criteria approval actions for Idaho, finding jeopardy for eight pollutants (arsenic, copper, lead, nickel, selenium, zinc, cyanide, and mercury). Likewise, NMFS recently completed its biological opinion on the same Idaho criteria, making a jeopardy conclusion for five of those pollutants (arsenic, copper, selenium, cyanide, and mercury). Many of the species

---

[4] Under the ESA, a proposed action "'jeopardizes' the continued existence of" a species if it "reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02. EPA ultimately modified its proposed rule to avoid a final jeopardy biological opinion.

**COMPLAINT** - 16

Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

addressed by the jeopardy opinion in California and the final jeopardy opinions in Oregon and Idaho are also present in Washington waters.

38.     Table A, below, compares Washington's current criteria with the corresponding criteria for which FWS or NMFS have made jeopardy calls in Oregon, Idaho, or California. For many of the criteria, in Idaho, Oregon, and/or California, FWS or NMFS determined that criteria that are either equal to or more protective than Washington's current criteria were likely to jeopardize the continued existence of ESA-listed species in those states.

TABLE A

COMPARISON OF CURRENT WASHINGTON FRESHWATER CRITERIA WITH CORRESPONDING CRITERIA FROM OTHER STATES FOR WHICH FWS OR NMFS HAVE MADE JEOPARDY DETERMINATIONS[5]

|  | WA (Current) | Criteria with Jeopardy Calls (values in µg/L) | | | |
|---|---|---|---|---|---|
|  |  | ID (FWS 2015) | ID (NMFS 2014) | OR (NMFS 2012) | CA (FWS/ NMFS 2000) |
| Aluminum, Acute | NONE | -- | -- | 750 | -- |
| Aluminum, Chronic | NONE | -- | -- | 87 | -- |
| Ammonia, Acute | 24.1 mg/L* | -- | -- | 5.6 mg/L | -- |
| Ammonia, Chronic | 0.007 mg/L* | -- | -- | 1.7 mg/L | -- |
| Arsenic, Chronic | 190 | 150 | 150 | -- | 150 |
| Cadmium, Acute | 3.7* | -- | -- | 2.0 | 4.3 |

[5] For Tables A through D: The criteria listed are those that were in place at the time EPA denied NWEA's Petition. The criteria with an asterisk (*) were calculated by EPA using equations from Washington's toxic criteria footnotes. EPA, NWEA Petition WA Comparison Chart (May 31, 2017) (EPA spreadsheet accompanying EPA's May 31, 2017 memo to the record regarding its response to NWEA's Petition). These tables are NWEA's best effort to present this information in a succinct and meaningful way. These tables are intended to be illustrative of the information contained therein, and not binding on NWEA for purposes of this litigation. The use of the word "reserved" indicates an agreement by EPA to not promulgate criteria that would cause jeopardy. "NONE" indicates that Washington has no criterion for that particular pollutant. "--" indicates that a jeopardy determination was not made for that particular criterion; this could be because the criterion was not evaluated by the Service(s), or because the Service(s) made a "no jeopardy" determination.

Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

| | WA (Current) | Criteria with Jeopardy Calls (values in µg/L) | | | |
|---|---|---|---|---|---|
| | | ID (FWS 2015) | ID (NMFS 2014) | OR (NMFS 2012) | CA (FWS/ NMFS 2000) |
| Cadmium, Chronic | 1.03* | -- | -- | -- | 2.2 |
| Chromium III, Acute | 549* | -- | -- | -- | 550 |
| Chromium III, Chronic | 178* | -- | -- | -- | 180 |
| Chromium IV, Acute | 15 | -- | -- | -- | 16 |
| Chromium IV, Chronic | 10 | -- | -- | -- | 11 |
| Copper, Acute | 17* | 17 | 17 | 13 | 13 |
| Copper, Chronic | 11* | 11 | 11 | 9 | 9 |
| Cyanide, Acute | 22 | 22 | -- | -- | -- |
| Cyanide, Chronic | 5.2 | 5.2 | 5.2 | -- | -- |
| Lead, Acute | 65* | -- | -- | -- | 65 |
| Lead, Chronic | 2.52* | 2.5 | -- | -- | 2.5 |
| Mercury, Acute | 2.1 | -- | -- | -- | reserved |
| Mercury, Chronic | 0.012 | 0.012 | 0.012 | reserved | reserved |
| Nickel, Acute | 1,415* | 470 | -- | -- | 470 |
| Nickel, Chronic | 157* | 52 | 52 | -- | 52 |
| Pentachlorophenol, Acute | 20* | -- | -- | -- | 19 |
| Pentachlorophenol, Chronic | 13* | -- | -- | -- | 15 |
| Selenium, Acute | 20 | -- | -- | -- | reserved |
| Selenium, Chronic | 5 | 5 | 5 | -- | 5 |
| Silver, Acute | 3.45* | -- | -- | -- | 3.4 |
| Zinc, Acute | 114* | 120 | -- | -- | 120 |
| Zinc, Chronic | 104* | 120 | -- | -- | 120 |

39.     Levels of these and other toxic pollutants are among the reasons that EPA has long been concerned about the health of one of Washington's most important waterbodies, Puget Sound. EPA features the toxic contamination of Southern Resident killer whales, Pacific herring, and harbor seals in Puget Sound on its website as evidence of its ongoing concerns about toxic pollution

**COMPLAINT** - 18

Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

of Washington's waters. A 2006 EPA report on the ecosystem health of Puget Sound and the Georgia Basin focused on the effects of industrial activities and polluted surface runoff of metals and organic compounds, noting that killer whales "are some of the most contaminated marine mammals in the world because they have bioaccumulated these chemical contaminants through the entire food web," and that "[t]oxic chemical concentrations in Killer Whales and contamination of food sources" are among the reasons the species is listed under the ESA.[6]

40.     Toxic pollutants identified in aquatic species in Puget Sound have adverse impacts throughout the food chain for threatened and endangered species, particularly for Southern Resident killer whales and Chinook salmon. Chinook salmon fillets sampled from Puget Sound are almost three times more contaminated than samples in other areas along the Pacific West Coast, and Chinook salmon are a preferred prey of Southern Resident killer whales. Washington has identified the need to update its aquatic life standards for pollutants most harmful to killer whales and their prey.[7]

### Washington's Aquatic Life Water Quality Criteria

41.     Washington adopted some aquatic life criteria for 25 toxic pollutants[8] and

---

[6] EPA, Puget Sound Georgia Basin Transboundary Ecosystem Indicator Report (2006) at 119–120, available at http://s3.amazonaws.com/zanran_storage/www.epa.gov/ContentPages/109464162.pdf (last visited Feb. 8, 2017).

[7] Southern Resident Orca Task Force, Report and Recommendations (Nov. 16, 2018), at 64, *available at* https://www.governor.wa.gov/sites/default/files/OrcaTaskForce_reportand recommendations_11.16.18.pdf (last visited Aug. 19, 2020).

[8] For any given toxic contaminant, an aquatic life standard may contain up to four numeric criteria including: marine acute, marine chronic, freshwater acute, and freshwater chronic criteria. In addition, states may have sediment criteria. Thus, in this Complaint, when NWEA states, for example, that Washington or EPA adopted "some" aquatic life criteria for 25 pollutants, NWEA means that Washington or EPA adopted at least one of these types of aquatic life criteria for 25 pollutants.

**COMPLAINT - 19**

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

submitted them to EPA for approval on November 25, 1992. EPA approved these criteria on March 18, 1993. Because Washington did not adopt aquatic life criteria for marine chronic copper and marine chronic cyanide, EPA established Washington's aquatic life criteria for these pollutants through the National Toxics Rule ("NTR"), in which EPA promulgated chemical-specific, numeric water quality criteria for priority toxic pollutants for 14 states and territories—including Washington—that had failed to adopt new or revised numeric water quality criteria for toxic pollutants as required by CWA section 303(c)(2)(B).[9]

42.     Washington has adopted new or revised water quality standards numerous times since 1992, and some of these updates included new or revised aquatic life criteria for toxic pollutants. For example, on November 18, 1997, Washington adopted some new or revised aquatic life criteria for arsenic, cadmium, chromium IV, copper, cyanide, lead, mercury, nickel, selenium, silver, and zinc, including new or revised marine copper (acute and chronic) and site-specific (inside Puget Sound) marine cyanide (acute and chronic), the last of which are much less stringent than those recommended by EPA. The majority of these revisions made the criteria less stringent, and Washington also failed to adopt some new or revised aquatic life criteria for which EPA-recommended Clean Water Act section 304(a) criteria were available and more stringent than Washington's existing criteria. In 2003, Washington adopted marine chronic cyanide criteria for waters outside of Puget Sound.[10] And, in 2006, Washington adopted new or revised ammonia criteria, which EPA approved in 2008, prior to EPA's issuing of its new section 304(a) recommended criteria in 2013.

---

[9] *See generally*, EPA, Water Quality Standards: Establishment of National Criteria for Priority Toxic Pollutants; States' Compliance, Final Rule, 57 Fed. Reg. 60848, 60923 (Dec. 22, 1992).
[10] As a result of Washington's 1997 and 2003 adoptions of copper and cyanide criteria, in 2007 EPA removed Washington for all copper and cyanide aquatic life criteria from the NTR.

COMPLAINT - 20

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

43. Notably, in none of the approval or disapproval actions taken by EPA on Ecology's submissions of new or revised water quality criteria since 1992 did EPA find that Washington had failed to adopt criteria for all toxic pollutants for which EPA had adopted new or revised recommended 304(a) criteria, as required by Clean Water Act section 303(c)(2)(B). Nor did EPA make findings that Washington's NTR or aquatic life criteria were no longer consistent with EPA's recommended criteria.

44. Notwithstanding Washington's revisions to its water quality standards since 1992, Washington has not revised or adopted many aquatic life criteria for toxic pollutants as required by the Clean Water Act. The following tables provide details regarding many, but not all, of Washington's outdated criteria as compared to EPA's CWA section 304(a) recommended criteria.

**TABLE B**

CRITERIA FOR WHICH EPA HAS CWA SECTION 304(A) RECOMMENDED AQUATIC LIFE CRITERIA, BUT WASHINGTON HAS NO CORRESPONDING CRITERIA, IN GRAY (YEAR ADOPTED IN PARANTHESIS)[11]

| Substance | Existing WA Acute | Current 304(a) Acute | Existing WA Chronic | 304(a) Chronic |
|---|---|---|---|---|
| **FRESHWATER (values in µg/L)** | | | | |
| Acrolein | None | 3 (2009) | None | 3 (2009) |
| Aluminum | None | 750 (1988) | None | 87 (1988) |
| Carbaryl | None | 2.1 (2012) | None | 2.1 (2012) |
| Demeton | None | None | None | 0.1 (1986) |
| Diazinon | None | 0.17 (2005) | None | 0.17 (2005) |
| Guthion | None | None | None | 0.01 (1986) |
| Heptachlor epoxide | None | 0.52 (1981) | None | 0.0038 (1981) |
| Iron | None | None | None | 1000 (1986) |

[11] For Tables B through D: "P/NP" indicates which criteria are priority ("P") or nonpriority ("NP") pollutants. Toxic pollutants not included in Tables B through D for which Washington has outdated aquatic life criteria and for which NWEA petitioned EPA to update include (but may not be limited to) criteria for the toxic pollutants cyanide, zinc, and polychlorinated biphenyls ("PCBs").

Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

| Substance | Existing WA Acute | Current 304(a) Acute | Existing WA Chronic | 304(a) Chronic |
|---|---|---|---|---|
| Malathion | None | None | None | 0.1 (1986) |
| Methoxychlor | None | None | None | 0.03 (1986) |
| Mirex | None | None | None | 0.001 (1986) |
| Nonylphenol | None | 28 | None | 6.6 (2005) |
| Sulfide-Hydrogen Sulfide | None | None | None | 2 (1986) |
| Tributyltin | None | 0.46 (2004) | None | 0.072 (2004) |
| **SALTWATER (values in µg/L)** | | | | |
| Carbaryl | None | 1.6 (2012) | None | None |
| Demeton | None | None | None | 0.1 (1986) |
| Diazinon | None | 0.82 (2005) | None | 0.82 (2005) |
| Guthion | None | None | None | 0.01 (1986) |
| Heptachlor epoxide | None | 0.053 (1981) | None | 0.0036 (1981) |
| Malathion | None | None | None | 0.1 (1986) |
| Methoxychlor | None | None | None | 0.03 (1986) |
| Mirex | None | None | None | 0.001 (1986) |
| Nonylphenol | None | 7 (2005) | None | 1.7 (2005) |
| Sulfide-Hydrogen Sulfide | None | None | None | 2 (1986) |
| Tributyltin | None | 0.42 (2004) | None | 0.0074 (2004) |

<u>T</u><small>ABLE</small> C

<u>W</u><small>ASHINGTON'S AQUATIC LIFE CRITERIA THAT ARE LESS STRINGENT THAN THE CORRESPONDING</small></u>
<u>EPA CWA</u> <small>SECTION 304(A) RECOMMENDED CRITERIA (IN GRAY)</small>

| Substance | WA Acute | 304(a) Acute | WA Chronic | 304(a) Chronic |
|---|---|---|---|---|
| **FRESHWATER (values in µg/L)** | | | | |
| Ammonia (un-ionized NH3) | 24.1 mg/L* | 17 mg/L | 0.007 mg/L* | 1.9 mg/L |
| Arsenic | 360 | 340 | 190 | 150 |
| Cadmium | 3.7* | 1.8 | 1.03* | 0.72 |
| Chromium (Tri) | 549* | 570 | 178* | 74 |

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

| Substance | WA Acute | 304(a) Acute | WA Chronic | 304(a) Chronic |
|-----------|----------|--------------|------------|----------------|
| Copper[12] | 17* | BLM | 11* | BLM |
| Dieldrin | 2.5 | 0.24 | 0.0019 | 0.056 |
| Endrin | 0.18 | 0.086 | 0.0023 | 0.036 |
| Hexachlorocyclohexane (Lindane) | 2 | 0.95 | 0.08 | None |
| Lead | 65* | 65 | 2.52* | 2.5 |
| Mercury/Methylmercury | 2.1 | 1.4 | 0.012 | 0.77 |
| Nickel | 1,415* | 470 | 157* | 52 |
| Pentachlorophenol (PCP) | 20* | 19 | 13* | 15 |
| Selenium[13] | 20 | 2016 values | 5 | 2016 values |
| Silver | 3.45* | 3.2 | None | None |
| SALTWATER (values in µg/L) | | | | |
| Cadmium | 42 | 33 | 9.3 | 7.9 |
| Lead | 210 | 140 | 8.1 | 5.6 |

TABLE D
WASHINGTON AQUATIC LIFE CRITERIA THAT HAVE NOT BEEN UPDATED SINCE EPA'S
CORRESPONDING CWA SECTION 304(A) RECOMMENDED CRITERIA WERE LAST UPDATED (IN GRAY)
(YEAR ADOPTED IN PARANTHESIS)

| Substance | Existing WA Acute | Current 304(a) Acute | Existing WA Chronic | 304(a) Chronic |
|-----------|-------------------|----------------------|---------------------|----------------|
| FRESHWATER (values in µg/L) | | | | |
| Ammonia (un-ionized NH3) | 24.1 mg/L* (2006) | 17 mg/L (2013) | 0.007 mg/L* (2006) | 1.9 mg/L (2013) |

---

[12] The BLM, or Biotic Ligand Model, reflects the latest science on metals toxicity to aquatic organisms and uses receiving waterbody characteristics and monitoring data to develop site-specific water quality criteria. Because the site-specific criteria are determined via the model, they are not directly comparable to Washington's state-wide numeric criteria. However, EPA developed the BLM for the purpose of ensuring sufficient protection for aquatic life, including particularly threatened and endangered salmonids.

[13] Unlike other toxics, the 304(a) freshwater criterion for chronic selenium has numerous subcriteria. The 2016 values are more stringent than EPA's previous 304(a) recommended criteria from 1999 and more stringent than Washington's existing chronic criteria of 20 ug/L.

COMPLAINT - 23

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

| Substance | Existing WA Acute | Current 304(a) Acute | Existing WA Chronic | 304(a) Chronic |
|---|---|---|---|---|
| Arsenic | 360 (1992) | 340 (1995) | 190 (1992) | 150 (1995) |
| Cadmium[14] | 3.7 (1997)* | 1.8 (2016) | 1.03 (1997)* | 0.72 (2016) |
| Chromium (Hex) | 15 (1997) | 16 (1995) | 10 (1992) | 11 (1995) |
| Copper | 17 (1997)* | BLM (2007) | 11 (1997)* | BLM (2007) |
| Dieldrin | 2.5 (1992) | 0.24 (1995) | 0.0019 (1992) | 0.056 (1995) |
| Endrin | 0.18 (1992) | 0.086 (1995) | 0.0023 (1992) | 0.036 (1995) |
| Hexachlorocyclohexane (Lindane) | 2 (1992) | 0.95 (1995) | 0.08 (1992) | None |
| Mercury/Methylmercury | 2.1 (1997) | 1.4 (1995) | 0.012 (1992) | 0.77 (1995) |
| Pentachlorophenol (PCP) | 20 (1992)* | 19 (1995) | 13 (1992)* | 15 (1995) |
| Selenium | 20 (1992) | 2016 values | 5 (1992) | 2016 values |
| SALTWATER (values in µg/L) | | | | |
| Arsenic | 69 (1992) | 69 (1995) | 36 (1992) | 36 (1995) |
| Cadmium[15] | 42 (1997) | 33 (2016) | 9.3 (1997) | 7.9 (2016) |
| Chromium (Hex) | 1100 (1992) | 1100 (1995) | 50 (1992) | 50 (1995) |
| Copper | 4.8 (1997) | 4.8 (1985) | 3.1 (1997) | 3.1 (1985) |
| Dieldrin | 0.71 (1992) | 0.71 (1995) | 0.0019 (1992) | 0.0019 (1995) |
| Endrin | 0.037 (1992) | 0.037 (1995) | 0.0023 (1992) | 0.0023 (1995) |
| Hexachlorocyclohexane (Lindane) | 0.16 (1992) | 0.16 (1995) | None | None |
| Pentachlorophenol | 13 (1992) | 13 | 7.9 (1992) | 7.9 (1995) |

[14] Prior to EPA's updating in 2016 of the 304(a) recommended criteria for cadmium, EPA had last updated those criteria in 2001.
[15] Prior to EPA's updating in 2016 of the 304(a) recommended criteria for cadmium, EPA had last updated those criteria in 2001.

COMPLAINT - 24

Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

| Substance | Existing WA Acute | Current 304(a) Acute | Existing WA Chronic | 304(a) Chronic |
|-----------|-------------------|----------------------|---------------------|----------------|
| (PCP) | | (1995) | | |
| Selenium | 290 (1997) | 290 (1999) | 71 (1992) | 71 (1999) |

45.     Washington has long acknowledged the need to update its aquatic life criteria, but nevertheless the State has failed to do so. For example, in 2001, the Washington Department of Ecology ("Ecology")—the state environmental agency charged with administering Washington's program under the federal Clean Water Act—discussed potential future water quality standards updates to toxic criteria in accordance with Clean Water Act section 304(a) recommended criteria at the time. Ecology determined that updating toxic criteria was a low cost, low risk use of the agency's time. Similarly, Ecology stated in its 5-Year Work Plan for fiscal years 2012-2016 that staff would begin working to update aquatic life criteria for toxic pollutants in 2015, and that Ecology would begin the rulemaking to update the criteria in 2016. Most recently, Washington's Southern Resident Orca Task Force urged the updating of aquatic life toxic criteria focused on pollutants most harmful that the orcas and their prey.[16] Despite these statements, Ecology has not updated many of its aquatic life criteria for toxic pollutants for more than two decades. As noted above, the last time Washington updated any of its aquatic life criteria for toxic pollutants was in 2006.

**NWEA's Petition to EPA to Establish Numeric Toxic Standards for the State of Washington**

46.     On October 28, 2013, NWEA petitioned EPA under 5 U.S.C. §§ 553(e) and 555(e)

---

[16] *See* Southern Resident Orca Task Force, Final Report and Recommendations (Nov. 19), at 33, *available at* https://www.governor.wa.gov/sites/default/files/OrcaTaskForce_FinalReportand Recommendations_11.07.19.pdf (last visited Aug. 19, 2020).

COMPLAINT - 25

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

to use its rulemaking authority under Clean Water Act section 303(c)(4), 33 U.S.C. § 1313(c)(4), to, among other things, make a determination that updated aquatic life criteria for toxic pollutants were necessary to protect aquatic life in the State of Washington, and to promulgate federal regulations updating Washington's criteria accordingly. *See generally* Exhibit A.

47.     NWEA supplemented its Petition on August 31, 2015 and February 9, 2016, reminding the agency of the importance of the pending Petition and providing additional information with respect to the need for revised aquatic life criteria in particular to protect species in Washington's waters. NWEA's August 31, 2015 and February 9, 2016 letters are attached as Exhibits B and C to this Complaint, respectively. On May 4, 2016, EPA sent NWEA a letter with several follow-up questions regarding NWEA's Petition. *See* Exhibit D. NWEA responded to that letter on February 21, 2017. *See* Exhibit E.

48.     After waiting more than three years with no response, on February 21, 2017, NWEA filed suit against EPA in the Western District of Washington to compel EPA to finally respond to its Petition. *See NWEA v. EPA*, Case No. 2:17-cv-00263 (W.D. Wash. Feb. 21, 2017).

49.     As a result of this lawsuit, on May 31, 2017, EPA responded to NWEA's Petition, denying the Petition in its entirety. A copy of EPA's letter denying NWEA's Petition is attached as Exhibit F to this Complaint.

### EPA's Denial of NWEA's Petition

50.     EPA's denial of NWEA's Petition was based largely on its "general policy [] to work with states on priority-setting in a manner that is consistent with the statutory process envisioned under" the Clean Water Act. EPA explained that it was "not determining that new or revised aquatic life criteria … are not necessary to meet CWA requirements in Washington. Rather, in this instance, the EPA is exercising its discretion to allocate its resources in a manner that

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

supports regional and state activities to accomplish our mutual goals of protecting human health and the environment." Exhibit F at 6. In other words, EPA side-stepped the Petition's request that it decide whether new or revised aquatic life criteria were necessary to meet the requirements of the Clean Water Act, opting instead to continue to engage Washington in a voluntary process, notwithstanding the state's proven, long-term recalcitrance.

51.     EPA has known for years that Washington's aquatic life criteria for toxic pollutants need to be updated. For example, EPA has "encouraged" Washington to prioritize updates to aquatic life criteria for copper and ammonia, *id.* at 4, suggesting that EPA believes Washington needs to update criteria for these pollutants. Despite this encouragement, Washington has failed to conduct this important work and has instead chosen to focus on other work, such as updating human health criteria. While this other work is important, updating Washington's aquatic life criteria in a timely manner is also both important and required by law. In light of Washington's long history of delay in reviewing and updating its aquatic life criteria, EPA's continued deferrals to Washington, and its denial of NWEA's Petition, are unreasonable and unlawful.

52.     Moreover, Washington has not conducted the required triennial review since 2010, and has thus avoided the regulatory requirement that states explain their reasoning for not revising or modifying criteria for which EPA has published new or revised section 304(a) criteria when they submit the results of their triennial review to EPA. *See* 33 U.S.C. § 1313(c)(1); 40 C.F.R. § 131.20(a). In light of Washington's failure to comply with the requirements of the Clean Water Act and its regulatory requirements regarding triennial reviews, EPA's denial of NWEA's Petition based on its policy of continued deference to Washington was unreasonable and unlawful.

53.     EPA also identified several other reasons for its denial. First, EPA suggested in its denial letter that because some of Washington's aquatic life criteria are more stringent than EPA's

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

corresponding Clean Water Act section 304(a) recommended criteria, those criteria do not need to be updated. Exhibit F at 4. But the fact that a particular criterion is more stringent than EPA's recommended *nationwide* criterion does not mean that the criterion is sufficient to protect aquatic species in Washington waters. Regardless of whether Washington's criteria are more or less stringent than EPA's 304(a) recommended criteria, if EPA were to determine that Washington's criteria were insufficient to protect aquatic species—including threatened and endangered species—in the state's waters, then EPA would need to update those criteria. In denying NWEA's Petition, NWEA is not aware of any evidence that EPA actually evaluated whether the section 304(a) recommended criteria are sufficient for protection of aquatic life in Washington waters.

54.     Second, and relatedly, EPA relied heavily on the fact that many of Washington's human health criteria for toxic pollutants had recently been updated. *Id.* But for some toxic pollutants, the updated human health criteria were *less stringent* than the corresponding aquatic life criteria, including some criteria for the toxic pollutants cadmium, chromium III (chronic), copper, selenium, and silver.[17] In addition, for many toxic pollutants that are hazardous to aquatic life, Washington does not have human health criteria. This includes, but may not be limited to, aluminum, ammonia, cadmium, chloride (dissolved), chlorine (total residual), chlorpyrifos, chromium (hex), chromium (tri), copper (no human health criteria for saltwater), lead, parathion, pH, and silver. EPA's reasoning that it does not need to update Washington's aquatic life criteria because there are more restrictive human health criteria does not apply to these pollutants.

---

[17] Depending on the pollutant, either the human health or the aquatic life criteria will be more protective. For example, while EPA recommends that criteria for copper not exceed 1,300 micrograms per liter ($\mu$g/L) in order to protect human health, copper has such a deleterious effect on aquatic life that EPA recommends that criteria not exceed 4.8 $\mu$g/L to protect against acute effects to aquatic species in saltwater, and 3.1 $\mu$g/L to protect against chronic effects.

**COMPLAINT** - 28

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

55.     Moreover, that an updated human health criterion might be more stringent than the corresponding outdated aquatic life criterion does not mean that the human health criterion is *sufficient* to adequately protect aquatic life. In other words, for some toxic pollutants, the aquatic life criteria might need to be *more stringent* than the human health criteria. For example, it may in fact be true that toxic criteria to protect endangered Southern Resident killer whales in Puget Sound need to be far more stringent than criteria needed to protect people. The Southern Resident killer whales are apex predators that consume large quantities of Chinook salmon, which themselves are high up on the food chain and are therefore highly contaminated. In a process known as biomagnification, toxic chemicals accumulate in killer whale fat reserves and are also passed on to whale offspring, thereby affecting both adults and calves. Therefore, EPA's reasoning that updates to aquatic life criteria would be unlikely to result in changes to water quality because corresponding human health criteria are more stringent is flawed.

56.     Third, EPA suggested that NWEA did not meet its burden of proving that new or updated aquatic life criteria are necessary to protect aquatic life in Washington State. *Id.* at 5. But NWEA submitted an 88-page petition and several letters, describing and citing to numerous scientific studies, reports, and other evidence establishing why toxic criteria in Washington are outdated and need to be updated to protect aquatic life. EPA did not respond to or attempt to rebut this evidence.

57.     In fact, in its denial letter, EPA did not discuss any scientific or other evidence regarding whether Washington's aquatic life criteria are sufficient to protect aquatic life, and/or whether new or updated toxics criteria are necessary to protect aquatic life in Washington. This is true even for the aquatic life criteria for which both the corresponding Clean Water Act section 304(a) recommended aquatic life criteria and Washington's human health criteria are less stringent

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

or non-existent. Toxic pollutants with criteria that fall in this category include ammonia, cadmium, chromium III, copper, selenium, and silver. For these criteria, EPA stated that Washington should prioritize updating them "if those pollutants can be expected to interfere with the state's designated uses," *id.* at 4, but upon information and belief, EPA did not consider and/or ignored scientific or other types of evidence regarding whether updates to these criteria were necessary and therefore denied the Petition without determining whether the existing Washington criteria are based on sound scientific rationale and sufficient to protect aquatic life.

58.     As demonstrated in Tables A through D above, at the time EPA denied NWEA's Petition, EPA had strong reason to believe, based on scientific or other evidence before it that informed the bases for the jeopardy determinations listed in Table A and the EPA's 304(a) criteria listed in Tables B through D, that many of Washington's aquatic life criteria for toxic pollutants were missing, insufficient to protect aquatic life, and/or needed to be reviewed. Yet upon information and belief, EPA did not consider this scientific or other evidence in denying NWEA's Petition.

59.     Moreover, as shown in Table D, there are numerous pollutants for which Washington has not adopted revised criteria since EPA updated the corresponding 304(a) criteria. All of the pollutants in Table D, with the exception of ammonia, are priority pollutants listed pursuant to CWA section 307(a)(1), 33 U.S.C. § 1317(a)(1). Besides acrolein (a priority pollutant for which EPA has published 304(a) criteria but Washington has no corresponding criteria), priority pollutants for which EPA has updated the 304(a) criteria since Washington has updated its corresponding criteria, include arsenic, cadmium, chromium (hex), copper, dieldrin, hexachlorocyclohexane (lindane), mercury/methylmercury, PCP, and selenium.

60.     Lastly, NWEA petitioned for EPA to make a determination that Washington failed

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

to comply with Clean Water Action section 303(c)(2)(B) during each triennial review of its water quality standards conducted since 1992. EPA did not respond to this aspect of the Petition.

### EPA and Ecology Actions Since Petition Denial

61.     EPA's and Ecology's actions, or lack thereof, since EPA's denial of NWEA's Petition demonstrate the need for EPA to update Washington's aquatic life criteria for toxic pollutants.

62.     First, the recently updated human health criteria for toxic pollutants—that had been made more stringent in order to protect people who consumed higher than average amounts of fish and shellfish—have been withdrawn. Since EPA's denial of NWEA's Petition, EPA has replaced the updated human health criteria with less protective criteria that it had previously disapproved as not protective of Washington's designated uses. EPA's action underscores the need for states to have both protective human health criteria and protective aquatic life criteria in place and not to rely on one to serve the purposes of the other.[18]

63.     Second, in the more than three years since NWEA's Petition was denied, Ecology has not updated any of the state's aquatic life criteria for toxic pollutants. Ecology's Water Quality Program 2015-2020 Strategic Plan, which EPA cited in its denial letter, noted Ecology's goal to update unspecified aquatic life criteria in the next triennial review. However, Ecology has not conducted a triennial review since 2010 and, while Ecology had planned a triennial review for Spring 2019, that review did not occur. As of the date of filing, Ecology's website states that it is

---

[18] The State of Washington has filed suit in in this Court challenging EPA's decision to revise Washington's human health criteria to make the criteria less protective. *See State of Washington v. U.S. Envt'l Prot.* Agency, Case No. 2:19-cv-00884-RAJ (W.D. Wash., June 6, 2019). A coalition of Plaintiffs including environmental groups, regional tribes, and fishing organizations have filed a similar lawsuit. *See Puget Soundkeeper All., et al. v. U.S. Envt'l Prot. Agency*, Case No. 2:20-cv-00907-RAJ (W.D. Wash., June 11, 2020). Both cases are ongoing.

**COMPLAINT** - 31

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

not currently going through a triennial review because it has already identified its immediate priorities for rulemaking. Updates to Washington's aquatic life criteria are not included in Ecology's immediate priorities.

64.     Third, since EPA amended its regulations in 2015 to require each state to provide its reasoning for not updating toxic criteria for which 304(a) recommended criteria have been published or updated during its triennial reviews, 40 C.F.R. § 131.20(a), Washington has not conducted any triennial reviews. However, Ecology has submitted and EPA has acted on three sets of standards revisions, and in none of these revisions did Ecology update its aquatic life criteria for toxics or provide an explanation for its inaction. On August 1, 2016, Ecology submitted changes to its human health criteria for toxics without an explanation as to its failure to update aquatic life criteria; EPA approved and disapproved human health criteria on November 15, 2016. By letter dated March 1, 2019, Ecology submitted updates to its water quality standards generally pertaining to "recreational" criteria without an explanation as to its failure to update aquatic life criteria; EPA approved the changes to Washington's water quality standards on April 30, 2019. By letter dated December 31, 2019, Ecology submitted revisions generally pertaining to Total Dissolved Gas standards in the Snake and Columbia Rivers without an explanation as to its failure to update aquatic life criteria; on March 5, 2020 EPA approved the changes.

65.     Ecology's failure to conduct the required triennial reviews in 2011–2013, 2014–2016, and 2017–2019, and EPA's acquiescence in this failure, have resulted in Washington's having avoided the requirements of Clean Water Action section 303(c)(2)(B) and 40 C.F.R. § 131.20(a) to, at the very least, consider updating its aquatic life criteria for toxic pollutants or, alternatively, to provide an explanation for its not having done so. As a result, Washington has failed to adopt criteria that are scientifically defensible and protective of the designated uses to

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

ensure that the state's water quality standards "protect the public health or welfare, enhance the quality of water and serve the purposes of [the Act]." 33 U.S.C. § 1313(c)(2)(a).

66.     Upon information and belief, there are currently no proposals for revisions to any of Washington's aquatic life criteria for any toxic pollutants.

## CLAIM FOR RELIEF

**EPA's Denial of NWEA's Petition Was Arbitrary and Capricious, an Abuse of Discretion, and Not in Accordance with Law**

67.     NWEA incorporates and realleges all previous paragraphs.

68.     EPA is a federal agency whose actions are subject to review under the Administrative Procedure Act. 5 U.S.C. § 551(1).

69.     EPA's denial of NWEA's Petition is a "final agency action for which there is no other adequate remedy in a court" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704.

70.     The Clean Water Act states that EPA "shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard . . . in any case where [EPA] determines that a revised or new standard is necessary to meet the requirements of this Act." 33 U.S.C. § 1313(c)(4)(B).

71.     NWEA's Petition provided undisputed evidence that new or revised aquatic life criteria for toxic pollutants for the waters of the State of Washington are "necessary to meet the requirements of the Clean Water Act," within the meaning of Clean Water Act section 303(c)(4)(B).

72.     Since 2010, Washington has failed to conduct the required triennial reviews of all of its water quality standards, rendering ineffective the requirements of Clean Water Act section

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

303(c)(2)(B) and 40 C.F.R. § 131.20(a).

73.    Nonetheless, EPA denied NWEA's Petition.

74.    EPA's denial of NWEA's Petition seeking new or revised aquatic life criteria for toxic pollutants in the State of Washington was arbitrary, capricious, an abuse of discretion, and/or not in accordance with law, for at least the following reasons:

A.    EPA did not make a determination as to whether new or revised aquatic life criteria are necessary to meet the requirements of the Clean Water Act;

B.    EPA did not provide a reasonable explanation, grounded in the Clean Water Act, for its decision to not make the requested necessity determination;

C.    Washington has significantly delayed in updating the criteria to ensure protection of designated uses, and continues to do so;

D.    Washington has not conducted a triennial review since 2010, and has thus avoided, and rendered ineffective, the Clean Water Act's regulatory requirement that states explain their reasoning for not revising or modifying criteria for which EPA has published new or revised section 304(a) criteria when they submit the results of their triennial reviews to EPA, *see* 33 U.S.C. § 1313(c)(1); 40 C.F.R. § 131.20(a);

E.    Upon information and belief, EPA failed to adequately consider and/or ignored relevant scientific evidence and studies to ascertain whether updates to Washington's aquatic life criteria for toxic pollutants are necessary, and its denial of NWEA's Petition was not based on sound scientific rationale;

F.    EPA's reliance on the fact that Washington's human heath criteria were more stringent than the corresponding aquatic life criteria was flawed because this was only true for some, not all, of Washington's aquatic life criteria, and EPA failed to consider

COMPLAINT - 34

Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

whether the human health criteria were adequate to protect aquatic life;

G.      EPA's reliance on the fact that its 304(a) recommended criteria were more stringent than Washington's corresponding aquatic life criteria was flawed because this was only true for some, not all, of Washington's aquatic life criteria, and EPA failed to consider whether the 304(a) recommended criteria were adequate to protect aquatic life in Washington;

H.      EPA acknowledged that Washington should prioritize updates to the aquatic life criteria that are more stringent than the corresponding human health and 304(a) recommended criteria, yet EPA did not offer a reasonable explanation for why updates to those aquatic life criteria were not necessary;

I.       EPA ignored the requirement in Clean Water Act section 303(c)(2)(B), 33 U.S.C. § 1313(c)(2)(B), that states revise or adopt numeric criteria for priority pollutants for which EPA has published section 304(a) criteria, in order to protect designated uses. EPA's rationale for not granting NWEA's Petition, as applied to these toxic priority pollutants, was not reasonable and not based on sound science; and

J.       EPA improperly placed the burden on NWEA to establish that updated aquatic life criteria for toxic pollutants in the State of Washington were necessary to meet the requirements of the Clean Water Act.

75.     For at least these reasons, EPA's denial of NWEA's Petition seeking new or revised aquatic life criteria for toxic pollutants in the State of Washington was arbitrary, capricious, an abuse of discretion, and/or not in accordance with law, within the meaning of APA section 706, 5 U.S.C. § 706(2)(A).

**COMPLAINT** - 35

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1

### PRAYER FOR RELIEF

2

WHEREFORE, NWEA respectfully requests that this Court:

3

      1.      Declare that EPA acted arbitrarily, capriciously, in abuse of its discretion, and/or

4

contrary to law in denying NWEA's Petition requesting that EPA update the State of Washington's

5

aquatic life criteria for toxic pollutants;

6

      2.      Set aside EPA's denial of the portion of NWEA's Petition requesting that EPA

7

update the State of Washington's aquatic life criteria for toxic pollutants, and remand for further

8

consideration;

9

      3.      Order EPA to render a new decision on the portion of NWEA's Petition requesting

10

that EPA update the State of Washington's aquatic life criteria for toxic pollutants by a date certain;

11

      4.      Award NWEA its reasonable fees, costs, expenses, and disbursements, including

12

attorneys' fees, associated with this litigation;

13

      5.      Grant any other relief as the Court deems just and proper.

14

DATED this 16th day of September, 2020.

15

16

Respectfully submitted,

17

EARTHRISE LAW CENTER

18

s/ Lia Comerford

19

Lia Comerford, WSBA No. 56447

20

10101 S Terwilliger Blvd.

21

Portland, OR 97219

22

Telephone: (503) 768-6823

23

E-mail: comerfordl@lclark.edu

24

BRICKLIN & NEWMAN, LLP

25

s/ Bryan Telegin

26

Bryan Telegin, WSBA No. 46686
1424 Fourth Avenue, Suite 500

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

Seattle, WA 98101
Telephone: (206) 264-8600
Fax: (206) 264-9300
E-mail: telegin@bnd-law.com

*Counsel for Plaintiff Northwest Environmental Advocates*

**COMPLAINT** - 37

**Earthrise Law Center**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax. (206) 264-9300