1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10    NORTHWEST ENVIRONMENTAL               CASE NO. C20-1362 MJP
      ADVOCATES,
11                                          ORDER DENYING DEFENDANT'S
                          Plaintiff,        MOTION TO DISMISS AND
12                                          GRANTING IN PART THE JOINT
             v.                             MOTION TO VACATE SCHEDULE
13
      UNITED STATES
14    ENVIRONMENTAL PROTECTION
      AGENCY,
15
                          Defendant.
16

17
             This matter comes before the Court on Defendant's Motion to Dismiss (Dkt. No. 14) and
18
      the Parties' Joint Motion to Vacate the Existing Schedule and Set a New Schedule (Dkt. No. 21).
19
      Having reviewed the motions, Plaintiff's Opposition to the Motion to Dismiss (Dkt. No. 20),
20
      Defendant's Reply to the Motion to Dismiss (Dkt. No. 21), and all materials filed in support of
21
      both motions, the Court DENIES the Motion to Dismiss and GRANTS in part the Motion to
22
      Vacate the Schedule.
23

24

# BACKGROUND

Plaintiff Northwest Environmental Advocates (NWEA) wants the Environmental Protection Agency (EPA) to issue new and revised water quality standards for the State of Washington to protect aquatic life under the Clean Water Act (CWA). In 2013, NWEA filed a petition with the EPA demanding that it take action where Washington has not. Roughly four years later, EPA denied the petition. NWEA now appeals that denial under the Administrative Procedures Act, and asks the Court to: (1) find the EPA acted arbitrarily and capriciously in denying its petition to issue new and revised water quality standards for aquatic life in Washington; (2) vacate the denial of the petition and remand for further consideration by a date certain; and (3) award attorneys' fees and costs.

EPA seeks dismissal of NWEA's complaint for lack of subject matter jurisdiction, arguing that its petition denial is beyond judicial review. In the alternative, EPA asks for summary judgment based on the allegations in the complaint and its attachments—not the full administrative record. NWEA argues that EPA's decision is subject to judicial review and that summary judgment is premature given that the EPA has not filed the full administrative record. It argues in the alternative that even the limited administrative record demonstrates that EPA's denial was arbitrary and capricious. The Court reviews the relevant statutory background, NWEA's petition, and EPA's denial.

## A. Statutory Background on the CWA

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" through reduction and eventual elimination of the discharge of pollutants into those waters. 33 U.S.C. § 1251(a). To meet these goals, the CWA requires states to develop water quality standards (WQS) to protect designated uses of waters

within the state's regulatory jurisdiction for human and aquatic life. 33 U.S.C. §§ 1313(a)-(d). A WQS "defines the water quality goals of a water body, or portion thereof, by designating the use or uses to be made of the water and by setting [numeric or narrative] criteria necessary to protect the uses." 40 C.F.R. § 130.3. Numeric criteria are important elements of WQS because they help set limits on the discharge of toxic pollutants that could interfere with the waters' designated uses. 33 U.S.C. §§ 1313(c)(2), (d)(4)(C); 40 C.F.R., Part 131, Subpart B. WQS are set for both human and aquatic life. See 33 U.S.C. §§ 1251, 1252, 1317(a)(1).

Under Section 303(c) of the CWA, states have the primary responsibility for reviewing, establishing, and revising WQS applicable to their waters. 33 U.S.C. § 1313(c). Section 303(c)(2)(B) of the CWA requires states to adopt numeric criteria for certain toxic pollutants; namely, those pollutants listed pursuant to Section 307(a)(1) for which EPA has published criteria recommendations under CWA Section 304(a), where the discharge or presence of those pollutants could reasonably be expected to interfere with the designated uses adopted by a state. 33 U.S.C. § 1313(c)(2)(B). The pollutants listed pursuant to Section 307(a)(1) are commonly referred to as "priority pollutants." See 40 C.F.R. § 131.36(b)(1).

While states play a lead role in setting WQS, EPA serves as a backstop. See Gulf Restoration Network v. McCarthy (Gulf Restoration II), 783 F.3d 227, 230-31 (5th Cir. 2015). EPA periodically publishes recommendations reflecting the latest scientific knowledge for states to consult in establishing water quality criteria, including aquatic life criteria for many toxic pollutants. See 33 U.S.C. § 1314(a); (Compl. ¶¶ 42, 44 and Tables B, C, & D). States must establish WQS based on EPA's recommendations tailored to site-specific conditions or based on scientifically-defensible rationales. 40 C.F.R. § 131.11. And every three years, states must review WQS and modify them as appropriate or adopt new WQS as part of a "triennial review."

33 U.S.C. § 1313(c)(1); 40 C.F.R. § 131.20. Since 2015, states must explain their reasoning for not revising or adopting toxic criteria for which EPA has published new or revised Section 304(a) toxic criteria when the state submits the triennial review results. 40 C.F.R. § 131.20(a).

EPA plays an important role in scrutinizing a state's action or inaction in complying with the CWA. If EPA's Administrator determines that a state's new or revised WQS are inconsistent with the Act or that "a revised or new standard is necessary to meet the requirements of" the Act, the "Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard." 33 U.S.C. § 1313(c)(4). The EPA's discretionary decision is called a "necessity determination." Where EPA makes a necessity determination, then it must promulgate a new standard(s) within 90 days unless the state adopts a WQS that the EPA finds consistent with the CWA. Id.

**B. NWEA and its Petition**

NWEA is a regional non-profit organized in Oregon, some of whose members "reside near, visit, use, and/or enjoy rivers, streams, estuaries, wetlands, marine, and other surface waters throughout Washington, Puget Sound, the Pacific Ocean, and their many tributaries." (Complaint ¶ 9 (Dkt. No. 1).) "These NWEA members derive recreational, scientific, personal, professional, and aesthetic benefits from their use and enjoyment of Washington's waters and the fish and aquatic-dependent wildlife that rely upon Washington's waters for habitat-related functions." (Id.) NWEA members intend to continue to use Washington's waters for these various purposes. (Id. ¶¶ 9-10.) NWEA members have also been working to restore salmon habitat to protect both salmon and orca whales. (Id. ¶ 10.) This work is relevant to the present dispute because toxic pollution has long been known to harm both salmon and orca populations in Washington. (Id. ¶¶ 39-40.) As EPA has noted, Puget Sound's Southern Resident Orcas are some of the most

contaminated marine mammals in the world because they feed on contaminated marine life, particularly Chinook salmon, thereby bioaccumulating toxins that enter the water from industrial activities and surface water runoff. (Id.) Washington, too, "has identified the need to update its aquatic life standards for pollutants most harmful to killer whales and their prey." (Id. ¶ 40.)

On October 28, 2013, NWEA petitioned the EPA to set new and updated water quality standards for Washington specific to aquatic life in order to protect NWEA's members' interest in the waters and aquatic life in the state. NWEA's desire for action stems from Washington's listless efforts to adopt and revise WQS to protect aquatic life. (Compl. ¶¶ 41-45.) Washington's failure to act appears undisputed, and NWEA alleges that Washington itself has "long acknowledged the need to update its aquatic life criteria, but nevertheless the State has failed to do so." (Id. ¶ 45; see Compl. Ex. F at 3.) A brief review of Washington's WQS appears to confirm the allegation.

In 1992 Washington adopted some aquatic life criteria for 25 toxic pollutants, and EPA approved the criteria in 1993. (Compl. ¶ 41.) In 1996, 2003, and 2006, Washington adopted new or revised WQS. (Id. ¶ 42.) But Washington has not revised or adopted many aquatic life criteria for toxic pollutants for which the EPA has recommended specific criteria in accordance with Section 304(a) of the CWA. (Id. ¶ 44.) And while Washington's Department of Ecology (Ecology) has discussed updating its criteria, "the last time Washington updated any of its aquatic life criteria for toxic pollutants was in 2006." (Id. ¶ 45.) Washington lacks aquatic life criteria for many toxic pollutants for which EPA has recommended 304(a) criteria, many of the criteria Washington does have are less stringent than EPA's 304(a) criteria, and for many pollutants Washington has not updated its criteria despite the fact that EPA has updated its

Section 304(a) criteria. (Compl. ¶¶ 42, 44, and Tables B, C, and D.) And Ecology last engaged in a triennial review in 2010. (Compl. ¶¶ 52, 63.)

NWEA's petition specifically asked EPA to use its rulemaking authority under section 303(c)(4) of the CWA, 33 U.S.C. § 1313(c)(4), "to among other things, make a determination that updated aquatic life criteria for toxic pollutants were necessary to protect aquatic life in the State of Washington, and to promulgate federal regulations updating Washington's criteria accordingly." (Compl. ¶ 46.) The petition also asked EPA to issue updated criteria to protect human health, an issue that NWEA ultimately abandoned after Washington updated many human health criteria and obtained EPA approval for most of them. (See Exs. A, D, and F to Compl.) After supplementing its petition in 2015 and 2016, and responding to questions from EPA, NWEA filed suit on February 21, 2017 to compel EPA to respond to its petition. (Compl. ¶¶ 47-48.) EPA then denied the nearly four-year old petition its entirety on May 31, 2017. (Id. ¶ 49.) EPA stated that "[w]e do not believe that the use of federal rulemaking authority is the most effective or practical means at this time of addressing the concerns raised in NWEA's petition." (Compl. Ex. F. at 1.) EPA so concluded despite admitting that "Ecology has not updated the majority of Washington's life criteria since . . . 1992." (Id. at 3.)

## ANALYSIS

### A.    Legal Standard

"Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." Kokkonen v. Guardian Life Ins. of Am., 511 U.S. 375, 377 (1994). Through its Rule 12(b)(1) motion, EPA challenges the Court's subject matter jurisdiction and pushes NWEA to satisfy its burden of establishing that the Court has jurisdiction and the authority to grant the relief requested. See id. "A Rule 12(b)(1) jurisdictional attack may be

facial or factual." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, EPA's challenge is facial—EPA does not attack the truth of the allegations, but instead "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." <u>Id.</u> In assessing subject matter jurisdiction, the Court confines its review to the allegations in the complaint and draws all reasonable inferences in favor of NWEA. <u>See</u> <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004). And the Court accepts the factual allegations of the complaint as true, though it need not accept legal conclusions as true. <u>See</u> <u>Leite v. Crane Co.</u>, 749 F.3d 1117, 1121 (9th Cir. 2014) (noting that "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)).

**B.     Subject Matter Jurisdiction**

EPA contends that its decision not to grant NWEA's petition is beyond judicial review. The Court finds no merit in this argument.

The APA "give[s] an interested person the right to petition for the issuance . . . of a rule" from an administrative agency. 5 U.S.C. § 553(e). This applies to the present dispute because the term "rule" includes WQS promulgated by EPA under Section 303 of the CWA. <u>See</u> 33 U.S.C. § 1313(c)(4). Whenever an agency denies a petition for rulemaking, it must provide "[p]rompt notice" to the petitioner, ordinarily "accompanied by a brief statement of the grounds for denial." 5 U.S.C. § 555(e).

A general presumption of judicial review under the APA attaches to agency action, which serves as a "repudiation of the principal that efficiency of regulation conquers all." <u>Sackett v. EPA</u>, 566 U.S. 120, 130 (2012). A petitioner may seek judicial review under Section 706(2)(A) of the APA, and ask a court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); <u>see</u> <u>Motor Vehicle</u>

Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The Supreme Court reaffirmed that even seemingly discretionary agency determinations not to engage in rulemaking may be subject to judicial review under the APA. See Massachusetts v. EPA, 549 U.S. 497, 527 (2007). "Refusals to promulgate rules are thus susceptible to judicial review, though such review is 'extremely limited' and 'highly deferential.'" Id. at 527-28 (quoting Nat'l Customs Brokers & Forwarders Assn. of Am., Inc. v. United States, 883 F.2d 93, 96 (C.A.D.C. 1989)). In Massachusetts, the Court held that EPA's refusal to engage in rulemaking under the Clean Air Act (CAA) to regulate carbon dioxide was subject to judicial review. Id. at 527-34.

Just as the Court in Massachusetts found EPA's refusal to invoke its rulemaking authority under the CAA to be reviewable, the Court finds that EPA's decision here is subject to judicial review. The Court in Massachusetts considered EPA's broad discretionary authority under the CAA, which largely mirrors the EPA's discretion at issue here under the CWA. Under the CAA, the EPA Administrator must propose regulations for air pollutants but only for those "which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). Similarly, CWA Section 303(c)(4) provides EPA with broad discretion to "determine that a revised or new standard is necessary to meet the requirements of [the CWA]" before it is then required to make rules. 33 U.S.C. § 1313(c)(4). Both statutes thus provide wide discretionary latitude when it comes to rulemaking. Assessing both statutes and the Court's decision in Massachusetts, the Court finds no meaningful distinction between the discretion afforded to EPA under the CAA and the CWA. Consistent with the reasoning in Massachusetts, the Court here finds EPA's refusal to engage in rulemaking under the CWA remains subject to judicial review. See Massachusetts. 549 U.S. at 527-34.

1    The Court is also persuaded to reach this outcome in light of the Fifth Circuit's

2    determination that EPA's refusal to make a necessity determination remains judicially

3    reviewable. Gulf Restoration II, 783 F.3d at 232–42 (invoking Massachusetts and concluding the

4    court had jurisdiction to review EPA's denial of a CWA section 303(c)(4)(B) rulemaking

5    petition). EPA tries to distinguish this case in a footnote suggesting that it did not "grapple with

6    the fact" that there is discretion in making the necessity determination. (MTD at 12 n.3) This is

7    inaccurate. In Gulf Restoration II, the Fifth Circuit carefully considered Massachusetts and held

8    that the EPA's refusal to make a necessity determination was both discretionary and subject to

9    judicial review. Gulf Restoration II, 783 F.3d at 242-44. The court also noted the similarities in

10   the discretion the EPA enjoys under both the CAA and CWA and that a court may still determine

11   "whether the EPA's explanation for why it declined to make a necessity determination was

12   legally sufficient." Id. at 243. The Court agrees with the Fifth Circuit's analysis and finds it

13   persuasive on this issue. The Court notes that EPA's reply brief failed to present any rebuttal

14   argument to NWEA's briefing on this point, an apparent concession that it has merit.

15       Nonetheless EPA insists that the "necessity determination" is committed to agency

16   discretion by law and unreviewable because there are no "'meaningful standard[s]" against

17   which a court can judge the agency's exercise of discretion." (MTD at 10 (quoting Heckler v.

18   Chaney, 470 U.S. 821, 830 (1985)).) But EPA's reliance on Heckler is misplaced. Heckler

19   involved a petition for agency enforcement, not rulemaking. As the Court in Massachusetts

20   noted, "[t]here are key differences between a denial of a petition for rulemaking and an agency's

21   decision not to initiate an enforcement action." 549 U.S. at 527. A refusal to engage in

22   rulemaking still enables a court to judge whether the refusal is grounded in the statute, which

23   involves "legal as opposed to factual analysis." Id. at 527. It also presents a case where the

24

"affected party had an undoubted procedural right to" question the agency through a petition, unlike in an enforcement action. Id. at 527. The Court thus finds no merit in EPA's reliance on Heckler, particularly given the reasoning in Massachusetts finding it inapposite to the present scenario where the agency denied a petition for rulemaking.

The Court remains similarly unpersuaded by EPA's insistence that it should follow the non-binding decision in Missouri Coalition for the Env't Found. v. Jackson, 853 F. Supp. 2d. 903, 912 (W.D. Mo. 2012). At least three reasons compel this outcome. First, the court in Missouri Coalition failed to cite to or consider the Supreme Court's decision in Massachusetts. This greatly undermines its persuasiveness. As the Fifth Circuit has held, and as this Court concludes, the reasoning and outcome in Massachusetts strongly counsel finding that EPA's necessity determination is judicially reviewable. See Gulf Restoration II, 783 F.3d at 242-44. Second, the court in Missouri Coalition found EPA's necessity determination beyond review because it could "locate no language in either the statute or the regulations which identifies the factors to be used by the agency in deciding whether to exercise its discretion under Section 303(c)(4)(B)." Id. at 911. But this stands in contrast to the Massachusetts decision where the majority found reviewability even where, as Justice Scalia observed in his dissent, the CAA "says nothing at all about the reasons for which [EPA] may defer making a judgment—the permissible reasons for deciding not to grapple with the issue at the present time." Massachusetts, 549 U.S. at 552 (Scalia, J., dissenting) (emphasis in original). And the court in Missouri Coalition did not meaningfully explain why the CWA and EPA's implementing regulations could not serve as a guide to understand whether the necessity determination was proper or "ground[ed] . . . in the statute." See Massachusetts, 549 U.S. at 534-35. The Court finds this view of the CWA unpersuasive. Third, as NWEA notes, EPA had not actually denied a

petition for rulemaking in <u>Missouri Coalition</u>, which meant the court had no means of knowing whether EPA's refusal to engage in rulemaking was grounded in the CWA or not. For these reasons, the Court does not place any reliance on <u>Missouri Coalition</u>.[1]

The Court is similarly unmoved by EPA's invocation of the decision in <u>Conservancy of SW Florida v. U.S. Fish & Wildlife Serv.</u>, 677 F.3d 1073 (11th Cir. 2012). In that case the Eleventh Circuit held that the Fish and Wildlife Service's refusal to designate critical habitat under the Endangered Species Act (ESA) was unreviewable. That decision packs little persuasive punch. The decision emphasized the "permissive language" of the ESA, 677 F.3d at 1083, noting that its "permissive character is not qualified by any other statutory limit on the Service's discretion." <u>Id.</u> at 1083, n.15. The same cannot be said the CWA, where the necessity determination is cabined by, among other things, mandatory provisions that the states have aquatic life WQS and specific mandates that the waters of each state protect aquatic life. The Court finds that the discretion at issue here more closely tracks the relevant CAA provisions and outcome in <u>Massachusetts</u> than the discretion at issue under the ESA in <u>Conservancy</u>.

The Court therefore finds that NWEA has met its burden of establishing that the Court has subject matter jurisdiction under the APA to review the EPA's denial of NWEA's petition.

---

[1] The Court is similarly unpersuaded by <u>Davis v. Jackson</u>, No. 8:09-CV-1070-T-17 TBM, 2010 WL 2431952, at *3 (M.D. Fla. June 16, 2010). In that case, the court concluded that EPA's necessity determination "is the type that is exempted from action under 5 U.S.C. § 701(a)(2)." <u>Id.</u> Not only did the Court fail to cite to or distinguish <u>Massachusetts</u>, but its curt reasoning also does not provide any meaningful explanation as to why the EPA's action is beyond judicial review. <u>Id.</u> at *3.

1    **C.     Summary Judgment**

2           EPA alternatively asks the Court to grant summary judgment if the Court finds its

3    decision reviewable. NWEA requests the Court deny the motion until the full administrative

4    record is before the Court. The Court agrees with NWEA.

5           Under Rule 56(d), a party may ask the Court to defer ruling on or deny a motion for

6    summary judgment where it "cannot present facts essential to justify its opposition." Fed. R. Civ.

7    P. 56(d). Relevant to this case is the fact that the Court generally decides the merits of an APA

8    claim on the full administrative record. See San Luis & Delta–Mendota Water Auth. v. Locke,

9    776 F.3d 971, 992 (9th Cir. 2014). Under Rule 56(d), the Court has broad discretion to defer or

10   deny the motion, allow discovery, or fashion "any other appropriate order." Id.

11          This is an administrative action which must be decided on the full administrative record.

12   On this point the Parties long ago expressed their "agree[ment] that . . . the issue of liability . . .

13   will be determined based on EPA's administrative record." (Joint Status Report at 3 (Dkt. No.

14   10).) It is thus premature for EPA to ask the Court to determine liability without the full

15   administrative record. And NWEA has presented a declaration of counsel outlining various

16   components of the administrative record it reasonably expects to be produced that could impact

17   any determination of liability. (Declaration of Lia Comerford ¶ 7.) The Court therefore DENIES

18   the Motion for Summary Judgment under Rule 56(d). The Court also ORDERS EPA to produce

19   the full administrative record within 10 days of entry of this Order. While EPA may believe this

20   a short timetable, it long ago proposed to file the full administrative record with its answer and

21   should thus be ready and capable of making its rapid production.

22          Further, in light of the proposals contained in the Joint Motion to Vacate the Schedule,

23   the Court ORDERS the Parties to:

24

1     (1) meet and confer within 20 days of the production of the full administrative record to

2 discuss whether the existing case schedule needs to be amended; and

3     (2) file a joint status report within 5 days of the meet and confer to report on whether any

4 new case deadlines need to be entered and to propose dates for any such new case deadlines.

5     On this basis, the Court GRANTS in part the Joint Motion to Vacate the Schedule.

6 **CONCLUSION**

7     NWEA persuasively demonstrates that the Court has authority under the APA to review

8 EPA's denial of its petition for rulemaking under the APA. EPA's discretionary determination

9 does not evade judicial review. The Court thus DENIES the Motion to Dismiss. The Court also

10 finds EPA's Motion for Summary Judgment premature absent the full administrative record and

11 DENIES it. The Court ORDERS EPA to produce the full administrative record within 10 days of

12 this Order. The Court ORDERS the Parties to meet and confer within 20 days of production of

13 the full administrative record and to file their joint status report 5 days thereafter.

14     The clerk is ordered to provide copies of this order to all counsel.

15     Dated June 1, 2021.

16

17                     Marsha J. Pechman
                     United States Senior District Judge

18

19

20

21

22

23

24