1

The Honorable Marsha J. Pechman

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

**NORTHWEST ENVIRONMENTAL**
10    **ADVOCATES,** an Oregon non-profit
corporation,
11

NO. 20-cv-01362-MJP

12                              Plaintiff,

**PLAINTIFF'S MOTION FOR**
13         v.                          **SUMMARY JUDGMENT**

14    **UNITED STATES**
**ENVIRONMENTAL PROTECTION**          **NOTE ON MOTION CALENDAR:**
15    **AGENCY,**                        October 22, 2021

16                              Defendant.     **ORAL ARGUMENT REQUESTED**

17

18

19

20

21

22

23

24

25

26

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

# TABLE OF CONTENTS

MOTION ...................................................................................................................1

INTRODUCTION .......................................................................................................1

LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND ...............................2

I.    The Clean Water Act and Water Quality Standards......................................2

II.   The Importance of Water Quality Standards .................................................5

III.  Toxic Pollutants Harm Washington's Aquatic Species.................................6

IV.   Washington's Aquatic Life Water Quality Criteria .......................................9

V.    Procedural History.......................................................................................11

STANDARD OF REVIEW.......................................................................................12

ARGUMENT .............................................................................................................13

I.    EPA's denial of the Petition was arbitrary, capricious, and contrary to the CWA ..........13

      A.    EPA's reasons for denying NWEA's Petition must be reasonable and grounded in the CWA ..........................................................13

      B.    EPA's reasons for denying NWEA's Petition were unreasonable, not grounded in the CWA, and not supported by the record .....................................15

            1.    CWA section 303(c)(4)(B) necessity determinations must be based on science, and EPA's denial of the Petition was not ............................15

            2.    EPA's continued deference to Washington is unreasonable, not grounded in the CWA, and not supported by the record........................18

            3.    EPA's reliance on Washington's human health criteria was unreasonable and not grounded in the CWA .............................................23

            4.    EPA's reliance on its 304(a) criteria was unreasonable and not grounded in the CWA...............................................................26

II.   NWEA has standing to pursue its claim.......................................................28

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

III.    As a remedy, the Court should order EPA to vacate its Petition Denial and make a new decision on the Petition by a date certain. ...................................................................29

CONCLUSION...................................................................................................30

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - ii
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

**Table of Authorities**

**Cases**   **Page(s)**

*Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181 (9th Cir. 2004) ...................................29

*Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160 (9th Cir. 2010).....................................13

*Beno v. Shalala*, 30 F.3d 1057 (9th Cir. 1994)........................................................................17

*Blue Water Baltimore, Inc. v. Wheeler*, No. GLR-17-1253,
   2019 WL 1318087 (D. Md. Mar. 22, 2019) .....................................................................20

*Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001).....................................................................13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................................13

*City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001) ...............................................26

*Columbia Riverkeeper v. Wheeler*, 944 F.3d 1204 (9th Cir. 2019)..........................................21

*Compassion Over Killing v. U.S. FDA*, 849 F.3d 849 (9th Cir. 2017) .......................................12

*Defs. of Wildlife v. EPA*, 420 F.3d 946 (9th Cir. 2005) ...........................................................29

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989)......................................................................30

*Gulf Restoration Network v. Jackson*, 224 F. Supp.3d 470 (E.D. La. 2016) ............................22

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ...............28

*Gulf Restoration Network v. McCarthy*, 783 F.3d 227 (5th Cir. 2015) ...............................14, 21

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ............................................29

*Los Angeles Waterkeeper v. Pruitt*, 320 F. Supp.3d 1115 (C.D. Cal. 2018).......................19, 20

*Massachusetts v. EPA*, 549 U.S. 497 (2007)..............................................12, 14, 15, 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)....................12

*Occidental Eng'g Co. v. INS*, 753 F.2d 766 (9th Cir. 1985) ....................................................13

*Pronsolino v. Nastri*, 291 F.3d 1123 (9th Cir. 2002)................................................................6

*San Luis & Delta–Mendota Water Auth. v. Locke*, 776 F.3d 971 (9th Cir. 2014) ......................12

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - iii
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1    *Sierra Club v. EPA*, 346 F.3d 955 (9th Cir. 2003) ........................................................29

2

3    **Statutes**                                                                    **Page(s)**

4    5 U.S.C. § 555(b) ..........................................................................................................29

5    5 U.S.C. § 706 ..............................................................................................................12

6    5 U.S.C. § 706(2)(A) ..............................................................................................12, 29

7    16 U.S.C. § 1536 ............................................................................................................7

8    33 U.S.C. § 1251(a)(1) ....................................................................................................2

9

10   33 U.S.C. § 1251(a)(2) ....................................................................................................2

11   33 U.S.C. § 1251(a)(3) ....................................................................................................2

12   33 U.S.C. § 1311 ............................................................................................................5

13   33 U.S.C. § 1311(b)(1)(C) ..............................................................................................6

14   33 U.S.C. § 1316 ............................................................................................................5

15
     33 U.S.C. § 1313(a) ........................................................................................................2
16

17   33 U.S.C. § 1313(c)(1) ................................................................................................3, 4

18   33 U.S.C. § 1313(c)(2) ....................................................................................................3

19   33 U.S.C. § 1313(c)(2)(A) ....................................................................................2, 4, 16

20   33 U.S.C. § 1313(c)(2)(B) ........................................................................................4, 28

21   33 U.S.C. § 1313(c)(3) ........................................................................................4, 5, 16

22   33 U.S.C. § 1313(c)(4) ....................................................................................................5

23   33 U.S.C. § 1313(c)(4)(A) ..............................................................................................5

24   33 U.S.C. § 1313(c)(4)(B)....................................................................................*passim*

25   33 U.S.C. § 1313(d) ........................................................................................................6

26   33 U.S.C. § 1313(d)(1)(A) ..............................................................................................6

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

33 U.S.C. § 1313(d)(4)(B)............................................................................3

33 U.S.C. § 1314(a)(1)...............................................................................3

33 U.S.C. § 1317(a)(1)...............................................................................4

33 U.S.C. § 1342(a)....................................................................................6

33 U.S.C. § 1362(14)..................................................................................5

42 U.S.C. § 7521(a)(1)..............................................................................14

**Regulations**                                                                                    **Page(s)**

40 C.F.R. § 130.2(j)....................................................................................6

40 C.F.R. § 131.2..................................................................................2, 16

40 C.F.R. § 131.5(a)(2).............................................................................16

40 C.F.R. § 131.6(b)..................................................................................17

40 C.F.R. § 131.6(c)..................................................................................17

40 C.F.R. § 131.10(d)..................................................................................2

40 C.F.R. § 131.11....................................................................................17

40 C.F.R. § 131.11(a)..................................................................................4

40 C.F.R. § 131.11(a)(1).........................................................................3, 27

40 C.F.R. § 131.20(a)..................................................................................5

40 C.F.R. § 131.21......................................................................................5

40 C.F.R. § 131.21(b).................................................................................16

40 C.F.R. § 131.21(d)..................................................................................5

40 C.F.R. Part 131, Subpart B......................................................................3

40 C.F.R. § 401.15.................................................................................4, 28

40 C.F.R. Part 423, App'x A........................................................................4

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

50 C.F.R. § 402.02 ................................................................................................8

WAC-173-201A-240, Table 240 ...............................................................8, 27, 28


**Other**                                                                **Page(s)**

45 Fed. Reg. 79,318 (Nov. 28, 1980)......................................................................4

57 Fed. Reg. 60,848 (Dec. 22, 1992) .........................................................9, 20, 21

63 Fed. Reg. 53,911 (Oct. 7, 1998).......................................................................10

78 Fed. Reg. 54,518 (Sept. 4, 2013) .......................................................................5

81 Fed. Reg. 75,816 (Oct. 31, 2016).....................................................................28

85 Fed. Reg. 28,494 (May 13, 2020) .....................................................................30

BLACK'S LAW DICTIONARY (11th ed. 2019) .........................................................20

Fed. R. Civ. P. 56(a) ............................................................................................13

Fed. R. Evid. 201(b) .............................................................................................28

Wash. State Reg. 97-23-064 (Dec. 3, 1997)..........................................................10

Wash. State Reg. 03-14-129 (July 16, 2003) .........................................................10

Wash. State Reg. 11-09-090 ....................................................................................8

Wash. State Reg. 16-16-095 ....................................................................................8

Wash. State Reg. 20-02-091 ....................................................................................8

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

**MOTION**

Plaintiff Northwest Environmental Advocates ("NWEA") moves for summary judgment seeking an order that defendant U.S. Environmental Protection Agency's ("EPA") 2017 denial of NWEA's petition to promulgate new or revised aquatic life criteria for toxic pollutants in the State of Washington was arbitrary, capricious, an abuse of discretion, and/or not in accordance with law in violation of the Administrative Procedures Act ("APA"), and for an order vacating EPA's denial and remanding to EPA for a new decision on the Petition by a date certain.

**INTRODUCTION**

Aquatic species in the State of Washington, including threatened and endangered species such as Chinook salmon and Southern Resident killer whales, are harmed by toxic pollutants in Washington's waters. The federal Clean Water Act ("CWA") requires states to adopt and regularly update water quality standards to protect such species from toxic pollutants. Where states fail to adopt these necessary standards, the CWA requires EPA do it for them.

For years, Washington has shirked its obligation to adopt aquatic life water quality criteria, as a part of its water quality standards, that are sufficient to protect aquatic species from toxics. Many of Washington's criteria have not been updated in decades, even as EPA has recommended more stringent toxics criteria. Both Washington and EPA have recognized the need to reduce toxics in Washington's waters in order to protect aquatic species. Yet the state continues to delay reviewing and updating its criteria, and EPA has allowed the state's inaction to undermine the very foundation of the CWA's regulatory framework—a framework intended to ensure that adequate criteria are in place to protect these sensitive species.

Fortunately, the APA provides a mechanism for citizens to petition federal agencies to act. On October 28, 2013, NWEA petitioned EPA to, among other things, use its authority under

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

CWA section 303(c)(4)(B), 33 U.S.C. § 1313(c)(4)(B) to make a determination that new and updated aquatic life criteria for toxic pollutants are necessary in Washington to meet the requirements of the CWA and to promulgate new and revised criteria for Washington. *See* EPA0000001–88 (Petition); EPA0005196–5209, 8591–97 (NWEA petition follow-up letters).[1] EPA denied NWEA's Petition in May 2017. *See* EPA0008665–70. EPA provided several rationales for its decision, none of which are reasonable or grounded in the statute. Therefore, the Court should find that EPA's denial of NWEA's Petition was arbitrary, capricious, and contrary to the CWA, and should vacate that denial and remand to EPA to make a new decision. Given the ongoing threats to Washington's aquatic species, the Court should order EPA to make that new decision within 180 days of its Order granting NWEA's motion.

## LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND

### I.    The Clean Water Act and Water Quality Standards

The CWA is the principle federal statute enacted to protect the quality of the waters of the United States. The CWA's primary goal is to eliminate the discharge of pollutants into navigable waters entirely; it also establishes "an interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife," 33 U.S.C. § 1251(a)(1)–(2), and sets a "national policy that the discharge of toxic pollutants in toxic amounts be prohibited," *id*. § 1251(a)(3). To meet these goals, the CWA requires states to develop water quality standards that establish and then protect the desired conditions of each waterway within their jurisdiction. *Id*. § 1313(a). Water quality standards must be sufficient to "protect the public health or welfare, enhance the quality of water and serve the purposes of [the CWA]." *Id*. § 1313(c)(2)(A).

Water quality standards establish the water quality goals for a waterbody. 40 C.F.R. §§

---

[1] Citations to "EPA[number]" are citations to EPA's administrative record, which is available at Dkts. 24–44.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 2
Case No. 20-cv-01362-MJP

Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

131.2, 131.10(d). Water quality standards must include several elements, including *inter alia*: (1) one or more designated beneficial uses of a waterway; and (2) numeric and narrative criteria specifying the water quality conditions, such as maximum amounts of toxic pollutants, that are necessary to protect the designated uses, including those downstream. 33 U.S.C. §§ 1313(c)(2), (d)(4)(B); 40 C.F.R. Part 131, Subpart B. For waters with multiple use designations, the criteria must support the most sensitive use. 40 C.F.R. § 131.11(a)(1).

Water quality criteria serve two primary protection goals: to protect human health and protect aquatic life. The adoption of criteria to protect human health is required for waters designated for public water supply, recreation, and catching fish for human consumption. EPA0000700–706 (EPA Handbook, discussing human health criteria). The purpose of criteria for the protection of aquatic life is to protect fish, invertebrates, and other aquatic species that are the hallmarks of a healthy waterbody. EPA0000699–700 (EPA Handbook, discussing aquatic life criteria).[2] The criteria "must be based on sound scientific rationale and must contain sufficient parameters or constituents to protect the designated use." 40 C.F.R. § 131.11(a)(1).

States have primary responsibility for reviewing, establishing, and revising water quality standards, including aquatic life criteria, for their waters. *See* 33 U.S.C. § 1313(c)(1). States frequently rely upon EPA's recommended criteria issued as guidance under CWA section 304(a), wherein EPA is required to develop, publish, and revise from time to time, "criteria for water quality accurately reflecting the latest scientific knowledge [] on the kind and extent of all identifiable effects on health and welfare[.]" *Id*. § 1314(a)(1). These 304(a) criteria are based solely upon scientific data concerning the relationship between pollutants and their effects on

---

[2] Aquatic life criteria are expressed in two forms: (1) acute criteria to protect against mortality and adverse effects of short-term exposure to a toxic chemical and (2) chronic criteria to protect against mortality and adverse effects as a result of long-term exposure to that chemical. EPA0000699–700.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 3
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1    human health and the environment and they exclude consideration of technological or economic

2    feasibility. *See* 45 Fed. Reg. 79,318, 79,319 (Nov. 28, 1980). State criteria may be *less stringent*

3    than the 304(a) criteria *only if* the state demonstrates to EPA that they protect the designated uses

4    and are based on "sound scientific rationale." *See* 40 C.F.R. § 131.11(a) (requiring criteria to

5    protect designated uses). A state may not adopt the EPA-recommended 304(a) criteria if those

6    criteria are not adequate to protect that state's designated uses. *Id*.

7        In addition, EPA must establish, and then may from time to time revise, a list of toxic

8    pollutants. 33 U.S.C. § 1317(a)(1); *see also* 40 C.F.R. § 401.15 (toxic pollutant list).[3] Once EPA

9    has issued 304(a) recommended criteria for any of these listed pollutants, whenever a state

10   reviews its water quality standards the state is required to adopt its own numeric criteria for those

11   pollutants, "the discharge or presence of which in the affected waters could reasonably be

12   expected to interfere with those designated uses adopted by the State, as necessary to support

13   such designated uses." 33 U.S.C. § 1313(c)(2)(B).

14       The CWA requires that at least once every three years, states review their water quality

15   standards and, "as appropriate," update and adopt new standards. *Id.* § 1313(c)(1). This process

16   is called a "triennial review." States must make the results of triennial reviews available to EPA.

17   *Id.* If a state proposes to revise or adopt new standards, such revisions or additions must be

18   submitted to EPA to determine consistency with the CWA's requirements, and EPA must either

19   approve or disapprove them. *Id.* §§ 1313(c)(2)(A), (3). Since 2015, EPA has required that a state

20   that does not revise or modify criteria for which EPA has published new or revised 304(a)

21   recommended criteria as required by CWA section 303(c)(2)(B) shall explain and justify this

---

[3] Based on the toxic pollutant list, EPA created a "priority pollutant" list. *See* 40 C.F.R. Part 423, App'x A (priority pollutant list); *see also* EPA0008671–75 (explaining lists and noting both are outdated).

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

omission when it submits the results of its triennial review to EPA. 40 C.F.R. § 131.20(a).[4]

EPA must notify a state within 60 days if it approves the new or revised standards. *See* 33 U.S.C. § 1313(c)(3). If EPA disapproves the state's standards, EPA must do so within 90 days and specify the changes that are needed to ensure compliance with the requirements of CWA section 303(c) and federal water quality standards regulations. *See id.*; *see also id.* § 1313(c)(4); 40 C.F.R. § 131.21. Where EPA determines that a new or revised state-submitted standard does not meet the CWA's requirements, EPA must promptly prepare and publish proposed rules with the new or revised water quality standard. 33 U.S.C. § 1313(c)(4)(A).

In addition, even when a state has not submitted a new or revised water quality standard to EPA for review and approval, the CWA requires that EPA "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard . . . in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of [the CWA]." *Id.* § 1313(c)(4)(B). This is the provision at issue in this case, implicated by EPA's refusal to promulgate new toxics criteria in Washington.

## II.     The Importance of Water Quality Standards

Water quality standards are the foundation of the CWA. They serve as the regulatory basis for establishing water quality-based controls for point sources of pollution, as required by CWA sections 301 and 306, 33 U.S.C. §§ 1311, 1316. *See, e.g.*, 40 C.F.R. § 131.21(d) (explaining how water quality standards are used); *see also* 33 U.S.C. § 1362(14) (defining "point source"). Point source discharges are regulated under National Pollutant Discharge

---

[4] *See* 78 Fed. Reg. 54,518, 54,525 (Sept. 4, 2013) (in proposed rule, EPA stating that "Stakeholders have expressed concern that states and tribes may retain criteria in their WQS that are no longer protective of designated uses for multiple triennial review cycles. . . . EPA agrees that it is important for states and tribes to consider any new or updated 304(a) criteria as part of their triennial review, in order to ensure that state or tribal water quality criteria reflect current science and protect applicable designated uses.").

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 5
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

Elimination System ("NPDES") permits that require both technology-based effluent limitations and "any more stringent limitation . . . necessary to meet water quality standards." 33 U.S.C. §§ 1311(b)(1)(C), 1342(a). Water quality standards are integral to point source pollution regulation.

Water quality standards are also used to establish measures to control nonpoint source pollution, which is generally considered to be any pollution that cannot be traced to a single discrete conveyance, such as runoff from agricultural or forestry lands and on-site septic systems. *Pronsolino v. Nastri*, 291 F.3d 1123, 1126 (9th Cir. 2002). Congress did not establish a federal permitting scheme for nonpoint sources of pollution. *Id.* at 1126–27. Even so, water quality standards apply to nonpoint sources. *See id.* at 1127 (acknowledging that states must set water quality standards for all their waters, regardless of the pollution source).

Also, water quality standards are the benchmarks by which a waterbody's quality is measured. Waterbodies that do not meet standards, or cannot meet standards after the imposition of technology-based effluent limitations on point sources, are placed on a list of such waters. *See* 33 U.S.C. § 1313(d)(1)(A); 40 C.F.R. § 130.2(j). States, or EPA if the states fail, must then develop clean-up plans, called total daily maximum loads ("TMDLs"), for listed waters to restore them to meeting standards. 33 U.S.C. § 1313(d).

## III.   Toxic Pollutants Harm Washington's Aquatic Species

Toxic pollutants pose significant hazards to aquatic species in Washington's waters, particularly those listed as threatened or endangered under the Endangered Species Act ("ESA"). *See* EPA Answer (Dkt. 23), ¶37 (admitting that "toxic pollutants have been identified in aquatic species in Puget Sound, including in threatened and endangered species"). Toxics can be devastating to aquatic life when in excess of species' biological tolerance. *See e.g.*, EPA0007785 (explaining metals toxicity). For example, in salmon, copper may impair juveniles' ability to

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 6
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

detect and respond to predators and may cause migratory disruption, weakened immune function and disease resistance, increased susceptibility to stress, liver damage, reduced growth, impaired swimming performance, weakened eggshells, and direct mortality. EPA0008507, 8516–21. Mercury, cadmium, and lead are considered of greatest concern to whales due to their impacts on prey populations and habitat quality, and mercury's ability to bioaccumulate. EPA0007236–37.

Levels of these and other toxics are among the reasons that EPA has long been concerned about the health of Puget Sound and its aquatic species. *See* EPA0007115 ("[r]ecent declines in orca population may be linked to threats such as toxic pollution . . . "); EPA0007123–24 ("PCBs in herring in southern Puget Sound are above levels that may cause negative effects in the food web. . . . PBDE levels are still moderately high and are seen as a significant contaminant in harbor seals."). A 2006 EPA report on the ecosystem health of Puget Sound and the Georgia Basin focused on the effects of pollution, noting that killer whales "are some of the most contaminated marine mammals in the world because they have bioaccumulated these chemical contaminants through the entire food web." EPA0007002–3.

These hazards have been recognized in formal consultations between expert fish and wildlife agencies and EPA pursuant to ESA section 7, 16 U.S.C. § 1536, in relation to EPA's approval of new or updated toxics criteria for other West Coast states, notably for some of the same species as are present in Washington. *See* EPA Answer, ¶37 (admitting that "certain species addressed by . . . the final jeopardy opinions in Oregon and Idaho are also present in Washington waters"). For example, in 2012, the National Marine Fisheries Service ("NMFS") issued a biological opinion ("BiOp") finding that EPA's approval of Oregon's cadmium, copper, aluminum, and ammonia criteria jeopardize the continued existence of multiple species of salmon and steelhead, and eulachon and/or destroy or adversely modify their habitat.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 7
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

EPA0006101, 6103–04, 6653–57; *see also* 50 C.F.R. § 402.02 (ESA regulatory definition of "jeopardize"). In 2015, the U.S. Fish and Wildlife Service's ("FWS") BiOp for EPA's approval of Idaho's toxic criteria found that criteria for arsenic, copper, lead, nickel, selenium, zinc, cyanide, and mercury jeopardize bull trout, sturgeon, and snails, and/or destroy or adversely modify their habitat. EPA0005210, 5478–79. NMFS's 2014 BiOp for the same Idaho criteria resulted in similar conclusions for arsenic, copper, selenium, cyanide, and mercury criteria for salmon and steelhead. EPA0005573, 5576, 5868–70. The criteria that FWS and NMFS found jeopardize ESA-listed species and/or destroy or adversely modify their habitat in Oregon and Idaho were equivalent to—and in some cases, even more protective than—Washington's current aquatic life toxics criteria. *Compare* WAC-173-201A-240, Table 240 (Washington's toxic criteria)[5], *with* Declaration of Lia Comerford, ¶2 & Ex. A, at EPA0008800-5 (EPA spreadsheet identifying toxics criteria with jeopardy calls).

Toxic pollutants enter Washington's waters in many ways, including but not limited to stormwater runoff, discharges from industrial and municipal facilities, and nonpoint sources. *See* EPA Answer, ¶36 (admitting second sentence of Complaint ¶36). Some toxics build up in sediment, where they are absorbed by microscopic plants and animals and then make their way into larger aquatic species, birds, and mammals through the food chain. *See* EPA0001107–1110 (EPA Columbia River Basin toxic report discussing bioaccumulation of persistent toxics such as DDT, mercury, PCBs, PBDEs, and dioxin). The record documents the presence of toxic pollutants in Washington's aquatic species and their sources, at levels known to be harmful to

---

[5] Since 2006, Washington has amended this code provision three times, but these amendments did not substantively change the aquatic life criteria. *See* Wash. State Reg. 20-02-091 (2019 amendments); Wash. State Reg. 16-16-095 (2016 amendments); Wash. State Reg. 11-09-090 (2011 amendments). Because the aquatic life criteria in the current rule where those in place at the time EPA denied NWEA's Petition, NWEA will cite to this rule for the aquatic life criteria. *See* WAC-173-201A-240, Table 240. Washington's human health criteria at the time EPA denied NWEA's Petition are found at EPA0008701–03. *See also* EPA0008666–7 (describing human health criteria updates).

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

many aquatic species. *See, e.g.*, EPA0007650–53 (discussing Puget Sound toxic loading study that "identified surface runoff as the largest contributor of toxic chemicals to Puget Sound" and stormwater samples that did not meet water quality standards for multiple toxics); EPA0007911, 7925 (report summarizing data gathered between 2009 and 2013 for Western Washington NPDES Phase I Stormwater Permit, including table showing that samples of copper, zinc, lead, cadmium, diazinon, mercury, and PCBs exceeded aquatic life criteria).[6]

## IV.   Washington's Aquatic Life Water Quality Criteria

Over the past 30 years, Washington has undertaken only limited, piecemeal efforts to bring its outdated toxics criteria up to current standards. For example, Washington adopted some aquatic life criteria for 25 toxic pollutants[7] and submitted them to EPA for approval on November 25, 1992.[8] EPA approved the criteria on March 18, 1993. However, because Washington did not adopt aquatic life criteria for marine chronic copper and marine chronic cyanide, EPA was forced to establish Washington's criteria for these pollutants itself through the National Toxics Rule ("NTR"), in which EPA promulgated numeric water quality criteria for toxic pollutants for 14 states and territories that had failed to adopt new or revised numeric water quality criteria for toxic pollutants as required by CWA section 303(c)(2)(B). *See* 57 Fed. Reg. 60,848, 60,922 (Dec. 22, 1992).

In 1997, Washington adopted some new or revised aquatic life criteria for arsenic,

---

[6] *See also, e.g.*, EPA0008531–8589 (NMFS comments on Washington's NPDES Industrial Stormwater General Permit, which would be issued to over 1,100 industrial facilities across Washington, raising concerns about allowable levels of metals—in particular copper and zinc—on salmon and steelhead); EPA0008472–75 (NMFS comments on NPDES permit for Longview Weyerhauser facility, raising concerns regarding discharges of persistent accumulative toxicants, including PCP, copper, and zinc, on aquatic species in the Columbia River).

[7] For any given toxic, an aquatic life standard may contain up to four numeric criteria including: marine acute, marine chronic, freshwater acute, and freshwater chronic. In addition, states may have sediment criteria. Thus, when NWEA states, for example, that Washington or EPA adopted "some" aquatic life criteria for 25 pollutants, NWEA means that Washington or EPA adopted at least one of these types of criteria for 25 pollutants.

[8] EPA admitted the basic facts in this paragraph. *Compare* Complaint (Dkt. 1), ¶41, *with* EPA Answer, ¶41.

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

cadmium, chromium IV, copper, cyanide, lead, mercury, nickel, selenium, silver, and zinc, including new or revised marine copper and site-specific (inside Puget Sound) marine cyanide, the last of which are much less stringent than those recommended by EPA. *See* Wash. State Reg. 97-23-064 (Dec. 3, 1997), at 37–38 & n.mm (showing 1997 criteria, including footnote setting Puget Sound marine cyanide criteria to 9.1 μg/L chronic and 2.8 μg/L acute); EPA0004384 (EPA 2013 304(a) criteria of 1 μg/L for saltwater acute and chronic cyanide). However, the majority of these revisions made the criteria less stringent. *Id.* In 2003, Washington adopted marine chronic cyanide criteria for waters outside Puget Sound. Wash. State. Reg. 03-14-129 (July 16, 2003), at 75 & 77 n.mm. And, in 2006, Washington adopted new or revised ammonia criteria. By 2013, these ammonia criteria had become outdated due to EPA's issuance of new section 304(a) criteria recommending more stringent limits. EPA0004383.

Notwithstanding Washington's revisions to its water quality standards since 1992, since then Washington has not revised or adopted many aquatic life criteria for toxic pollutants as required by the CWA. *See* EPA0008667 (EPA Denial Letter, acknowledging that the majority of Washington's aquatic life criteria have not been updated since 1992). Further, Washington also failed to adopt some new or revised aquatic life criteria for which more-stringent EPA-recommended CWA section 304(a) criteria were available. *See, e.g.*, *supra* (discussing Puget Sound cyanide criteria). Notably, in none of EPA's approval or disapproval actions on Washington's submissions of new or revised water quality criteria since 1992 did EPA find that Washington had failed to adopt criteria for all toxics for which EPA had adopted new or revised 304(a) criteria, as required by CWA section 303(c)(2)(B). *See, e.g.*, 63 Fed. Reg. 53,911, 53,916 (Oct. 7, 1998). Nor did EPA make findings that Washington's NTR or aquatic life criteria were no longer consistent with EPA's recommended criteria. *Id.*; *see also* EPA0000057–58.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 10
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

EPA is aware of Washington's decades-long failure to adopt new or revised water quality criteria necessary to protect aquatic life from toxics. *See* EPA0008667 (EPA Denial Letter acknowledging that Washington has not updated the majority of its aquatic life criteria since 1992 and that it is "important for states and tribes to review the latest science, including the EPA's national 304(a) criteria recommendations, and update criteria in a timely manner."). Washington has not conducted a triennial review since 2010. EPA Answer, ¶52. During Washington's 2010 triennial review, EPA commented that Washington should update its aquatic life criteria "and take into account criteria that have been determined to be less protective than levels determined to be protective by the USFWS and NMFS." EPA0004422. In response, Washington commented that it was "unknown at this point" how and whether it would use EPA and NMFS data in criteria development and that it was "waiting to see the results of the ESA consultation on the Oregon toxics criteria." EPA0004422. Washington's "wait and see" approach is indicative of its repeated foot-dragging in reviewing and updating its criteria.

## V.    Procedural History

On October 28, 2013, given Washington's long-time failure to update its aquatic life criteria and concerns about toxic effects to species, NWEA petitioned EPA to determine that Washington has failed to adopt aquatic life criteria as required by CWA section 303(c)(2)(B) in its triennial reviews since 1992, and to use its rulemaking authority under CWA section (c)(4)(B) to make a determination that new and revised aquatic life criteria for toxics are necessary to protect aquatic life in Washington and to promulgate regulations updating Washington's criteria accordingly.[9] *See* EPA0000001–88 (Petition); EPA0005196–5209, 8591–97 (NWEA petition follow-up letters). After more than three years with no response, NWEA filed suit to compel

---

[9] NWEA also asked EPA to take similar actions related to Washington's human health criteria for toxics. EPA0000001–2. NWEA is not challenging EPA's denial of these portions of the Petition.

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

EPA to respond to its Petition. EPA0008828–49 (Complaint). On May 31, 2017, EPA denied NWEA's Petition. EPA0008665–70.

NWEA filed its Complaint on September 16, 2020. Dkt. 1. On January 13, 2021, EPA moved to dismiss or in the alternative for summary judgment. Dkt. 14. On June 1, 2021, this Court denied EPA's motion, finding it had authority to review EPA's denial and denying EPA's summary judgment motion as premature given that EPA had not yet produced the administrative record. Dkt. 22. EPA produced the administrative record on June 11, 2021. Dkts. 24–44.

**STANDARD OF REVIEW**

EPA's denial of NWEA's Petition is a reviewable, final agency action under the APA, 5 U.S.C. § 706. A court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious where the agency has considered impermissible factors, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that is contrary to the record evidence, or is so implausible that it cannot be attributed to a difference in opinion or the result of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court's review is limited to the administrative record. *San Luis & Delta–Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014).

A court's review of an agency's refusal to promulgate a rule is "extremely limited and highly deferential." *Massachusetts v.* EPA, 549 U.S. 497, 528–29 (2007) (citations omitted). However, "[i]n denying a petition for rulemaking, an agency must, at a minimum, clearly indicate that it has considered the potential problem identified in the petition and provide a reasonable explanation as to why it cannot will not exercise its discretion to initiate rulemaking." *Compassion Over Killing v. U.S. FDA*, 849 F.3d 849, 857 (9th Cir. 2017) (citations omitted). A

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 12
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

court need not defer to an agency when its decision lacks a substantial basis in fact, and there must be "a rational connection between the facts found and the determinations made." *Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010). Further, "deference accorded an agency's scientific or technical expertise is not unlimited[,]" and "[t]he presumption of agency expertise can be rebutted when its decisions, while relying on scientific expertise, are not reasoned." *Brower v. Evans*, 257 F.3d 1058, 1067 (9th Cir. 2001).

A court may grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, when reviewing final agency action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, the court's role "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.*

## ARGUMENT

### I.     EPA's denial of the Petition was arbitrary, capricious, and contrary to the CWA.

Washington's aquatic species are significantly and negatively impacted by toxic pollutants in Washington waters. As discussed above, Washington has delayed, for decades, reviewing and updating its criteria. It is in precisely this situation that the CWA requires EPA to step in, determine updated criteria are necessary, and promulgate the criteria itself. EPA's denial of NWEA's Petition seeking these actions was arbitrary, capricious, and contrary to the CWA.

### A.     EPA's reasons for denying NWEA's Petition must be reasonable and grounded in the CWA.

In *Massachusetts v. EPA*, the Supreme Court established the standard for evaluating the legality of an agency's denial of a rulemaking petition. In *Massachusetts*, the plaintiffs challenged EPA's denial of a petition asking EPA to make an endangerment finding regarding

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 13
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

greenhouse gas ("GHG") emissions from new motor vehicles pursuant to the Clean Air Act ("CAA"). 549 U.S. at 510–14. CAA section 202(a) requires EPA to regulate emissions once it has made an endangerment finding. *Id.* at 533. EPA declined to make this finding and argued it lacked authority to regulate new motor vehicle emissions because GHGs are not "air pollutants" under the CAA. *Id.* at 511–14. EPA also argued it would be "unwise" to regulate GHG emissions and offered "a laundry list of reasons not to regulate." *Id.* at 533.

The Supreme Court disagreed with EPA, first finding that EPA had authority to regulate GHGs as "air pollutants." *Id.* at 528–32. The Court then held EPA that could avoid taking action only by determining that "[GHGs] do not contribute to climate change or [providing] some reasonable explanation as to why it c[ould] not or w[ould] not exercise its discretion to determine whether they do." *Id.* at 533. The Court concluded that because EPA's reasoning was "divorced from the statutory text," *id.* at 532, EPA failed to provide "a reasoned justification for declining to form a scientific judgment," *id.* at 533–34, and that EPA "must ground its reasons for action or inaction in the statute," *id.* at 535. The Court further noted that "[t]he statutory question is whether sufficient information exists to make an endangerment finding." *Id.* at 534.

*Massachusetts* governs here because the CAA provision at issue in that case is similar in all relevant respects to the CWA provision at issue here. While the statutes are not identical, both require EPA to issue regulations regarding certain pollutants if EPA makes a scientific determination that such regulation is necessary. *Compare* 42 U.S.C. § 7521(a)(1) (CAA), *with* 33 U.S.C. § 1313(c)(4)(B) (CWA); *see also Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 242–43 (5th Cir. 2015) (finding the CAA section at issue in *Massachusetts* and CWA section 1313(c)(4)(B) have the same structure and the *Massachusetts* standards apply to evaluating EPA's reasons for denying CWA section 303(c)(4)(B) petition). EPA agrees the *Massachusetts*

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1   standards apply here. *See* EPA Motion to Dismiss (Dkt. 14), at 14. Thus, to determine whether

2   EPA's denial of NWEA's Petition was arbitrary and capricious, this Court must look to whether

3   EPA's denial was grounded in the CWA and whether EPA provided a "reasoned justification for

4   declining to form a scientific judgment." *Massachusetts*, 549 U.S. at 533–35.

**B.    EPA's reasons for denying NWEA's Petition were unreasonable, not grounded in the CWA, and not supported by the record.**

7        EPA's reasons for denying NWEA's Petition were neither reasonable nor grounded in the

8   CWA. EPA stated that it was declining to answer the question presented to it: whether new and

9   updated toxics criteria were "necessary" to protect aquatic species in Washington waters.

10  Instead, EPA concluded:

> the EPA is not determining that new or revised aquatic life criteria . . . are not necessary to meet CWA requirements in Washington. Rather, in this instance, the EPA is exercising its discretion to allocate its resources in a manner that supports regional and state activities to accomplish our mutual goals of protecting human health and the environment.

EPA0008670. EPA's primary reason for denying the Petition was its general policy of having

states set their priorities and promulgate their own criteria. EPA0008667–70. However, EPA

provided additional reasons that demonstrate EPA did, despite its characterization of its action,

determine that new or revised criteria were not necessary, including that (1) Washington's

recently-updated human health criteria were more stringent than many of its aquatic life criteria;

and (2) some of Washington's aquatic life criteria were more stringent than EPA's 304(a)

criteria. *See* EPA0008667–69. All of EPA's reasons are unreasonable, not grounded in the text of

the CWA, and not supported by the record.

**1.    CWA section 303(c)(4)(B) necessity determinations must be based on science, and EPA's denial of the Petition was not.**

EPA's denial of NWEA's Petition was not grounded in the CWA because EPA's

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 15
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1    decision was not based on science. The CWA and its implementing regulations make clear that

2    whether new or revised criteria are "necessary to meet the requirements of" the CWA, 33 U.S.C.

3    § 1313(c)(4)(B), depends on whether the criteria are adequate to protect designated uses. And

4    EPA must answer that question based on sound scientific rationale.

5         When states revise or adopt new standards, those standards "shall be such as to protect

6    the public health or welfare, enhance the quality of water and serve the purposes of this Chapter.

7    Such standards shall be established taking into consideration their use and value for . . .

8    propagation of fish and wildlife . . . ." *Id.* § 1313(c)(2)(A).[10] Then, EPA must determine whether

9    the standards "meet[] the requirements of" the CWA, and either approve or disapprove the

10   standards. *Id.* § 1313(c)(3). The CWA's implementing regulations define "serve the purposes of

11   the Act", for purposes of 33 U.S.C. § 1313, to mean "that water quality standards should,

12   wherever attainable, provide water quality for the protection and propagation of fish, shellfish

13   and wildlife . . . and take into consideration their use and value of . . . propagation of fish,

14   shellfish, and wildlife[.]" 40 C.F.R. § 131.2. Thus, aquatic life criteria meet the CWA's

15   requirements when the criteria provide water quality that protect and allow for the propagation of

16   aquatic species. New or updated criteria are necessary when they do not do so.

17        EPA's determination of whether state-submitted water quality standards meet CWA

18   requirements "shall be based on the requirements of the Act as described in [40 C.F.R.] §§ 131.5

19   and 131.6." *Id.* § 131.21(b). As applicable to evaluating criteria, these include the requirements

20   that EPA determine "[w]hether the State has adopted criteria that protect the designated water

21   uses based on sound scientific rationale consistent with § 131.11," *id.* § 131.5(a)(2), and that

22   state submissions include the "[m]ethods used and analyses conducted to support water quality

---

[10] This "chapter" refers to Title 33, Chapter 26, which is the CWA.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 16
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

standards revisions," *Id.* § 131.6(b), and "water quality criteria sufficient to protect the designated use," *id.* § 131.6(c); *see also id.* § 131.11 (state water quality criteria "must be based on sound scientific rationale and must contain sufficient parameters or constituents to protect the designated use"). This law makes clear that the adequacy of criteria depends on whether the standards are supported by sound science showing that the criteria protect the designated uses.[11]

In denying NWEA's Petition, EPA did not consider or evaluate the scientific adequacy of Washington's existing aquatic life criteria. Neither the Denial Letter nor EPA's memo in support of that denial discuss the presence of toxics in Washington's waters; the effects of those pollutants on aquatic species; or whether the criteria are adequate to protect aquatic species. *See generally*, EPA0008665–70 (Denial Letter), 8796–99 (memo). Instead, EPA's rationale for denying the Petition was based on its desire for Washington to promulgate its own criteria and its misplaced reliance on Washington's human health criteria and EPA's 304(a) criteria. *Id.* As discussed below, these rationales are not reasonable explanations for denying NWEA's Petition.

EPA's administrative record does not save it. The vast majority of the record (112 documents) is comprised of documents submitted by NWEA in support of its Petition; in contrast, EPA added only 17 documents relating to the substance of its decision.[12] None of these 17 documents consist of science and data supporting the conclusion that new or revised aquatic life criteria are not needed to protect aquatic species in Washington. *See, generally*, EPA0008656–59, 8665–8800 and 8802–27. In fact, EPA's sparse record shows it did not adequately consider the Petition. *See Beno v. Shalala*, 30 F.3d 1057, 1072–76 (9th Cir. 1994)

---

[11] *See also* EPA0000699 (EPA Handbook noting that states develop their own criteria or modify EPA's 304(a) criteria "to account for site-specific or other scientifically defensible factors").

[12] The record consists of 133 documents. *See* Administrative Record Index (Dkt. 24-1). The remaining four documents are a letter delegating authority to sign the EPA denial letter (EPA0008801) and documents from NWEA's lawsuit challenging EPA's failure to respond to NWEA's Petition (EPA0008825–79).

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 17
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1    (reversing and ordering district court to remand decision to agency in part due to sparse record).

2    The significant number of number of scientific studies and reports NWEA submitted

3    establish the presence of toxic pollutants in Washington's waters and the negative effects of

4    those pollutants on aquatic species. *See supra*, Background Section III; *see also, e.g.*,

5    EPA0000733–1016 (EPA Columbia River Basin Fish Contaminant Survey for years 1996–

6    1998); EPA0001084–95 (EPA websites for the 2011 Toxics Release Inventory in the Columbia

7    River and Puget Sound-Georgia Basins); EPA0001487–1907 (Washington Toxic Monitoring

8    Program reports); EPA0002113–3403 (Washington TMDLs for toxics in waters across

9    Washington); EPA0007088–7407, 8598–8632 (reports and papers discussing harmful effects of

10   toxic pollutants on Washington's marine species); EPA0001025–83 (EPA and Washington

11   documents showing impaired waters in Washington, including waters impaired for toxic

12   pollutants); EPA0001096–1155 (EPA's January 2009 Columbia River Basin: State of the River

13   Report for Toxics); EPA0008476–8589 (NMFS scientific paper regarding effects of copper on

14   salmon and letters raising concerns about copper criteria in Washington NPDES permit).

15   Because EPA failed to evaluate whether new or revised aquatic life criteria are necessary

16   to protect aquatic life from a *scientific* perspective, EPA's denial of NWEA's Petition was

17   unreasonable, arbitrary, capricious, and not grounded in the statute. For these same reasons, and

18   based on all the evidence submitted by NWEA in the record, EPA's claim that NWEA did not

19   demonstrate the need for new or updated criteria, EPA0008669, is without merit.

20   **2.    EPA's continued deference to Washington is unreasonable, not grounded in the CWA, and not supported by the record.**

21   EPA denied NWEA's Petition largely because its preference is "to support states in their

22   development of [water quality standards] to protect state waters rather than promulgate federal

23   [water quality standards]." EPA0008665; *see also* EPA0008670 (stating that "EPA is exercising

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 18
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1   its discretion to allocate its resources in a manner that supports regional and states activities").

2   EPA reasons that it is justified in waiting decades for Washington to act based on its "long-

3   standing policy, consistent with the CWA, [] that states should develop and adopt standards in

4   the first instance." EPA0008666. EPA is wrong.

5       As an initial matter, EPA's reasoning requires a contorted reading of the statute that

6   focuses not on *whether* new or revised criteria are necessary, but whether it is necessary *for EPA*

7   to promulgate those criteria. This is inconsistent with the language of the CWA, which simply

8   requires EPA to determine whether new or revised criteria are "necessary to meet the

9   requirements" of the Act. 33 U.S.C. § 1313(c)(4)(B). Only after EPA makes the necessity

10  determination does *who* must promulgate the new or revised criteria become relevant. *Id.*

11

12      Further, EPA's "states first" rationale is not "a reasoned justification for declining to

13  form a scientific judgment." *Massachusetts*, 549 U.S. at 533–34. As discussed above, EPA's

14  reasoning regarding whether new criteria are "necessary" must relate to whether the criteria are

15  adequate to meet the designated use of protecting aquatic life, which requires a science-based

16  approach. EPA's "states first" rationale is not science-based and has nothing to do with

17  determining whether designated uses are adequately protected.

18

19      Two district courts, in a different context, have reached similar conclusions. In *Los

20  Angeles Waterkeeper v. Pruitt*, plaintiffs challenged EPA's denial of a CWA petition asking EPA

21  to make a determination that certain stormwater discharges contribute to water quality standards

22  violations and to require NPDES permits for the discharges. 320 F. Supp.3d 1115, 1119–20

23  (C.D. Cal. 2018). The court found EPA's reasons must relate to whether the discharges violated

24  the standards, and that EPA's decision was arbitrary and capricious because EPA considered a

25  factor divorced from CWA's text: whether other programs "adequately address the known

26

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 19
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

stormwater discharge contribution to a violation of water quality standards." *Id.* at 1125. In reaching this conclusion, the court noted that permissible factors included the sufficiency of available data, or a finding that the stormwater's contribution was *de minimis. Id.*; *see also Blue Water Baltimore, Inc. v. Wheeler*, No. GLR-17-1253, 2019 WL 1318087 (D. Md. Mar. 22, 2019) (in similar case, relying on *Los Angeles Waterkeeper* reasoning to reach similar conclusion).

Even if EPA's denial of NWEA's Petition could be based on a non-scientific rationale, its decision to continue waiting for Washington is unreasonable. NWEA does not dispute the CWA's cooperative federalism structure. But EPA's role is equally critical to achieving the CWA's goals, and EPA's "states first" approach relies upon states actually setting water quality criteria. *See supra*, Background Section I-II. "Cooperative federalism" is the "[d]istribution of power between the federal government and the states whereby each recognizes the powers of the other while jointly engaging in certain governmental functions." *Federalism*, BLACK'S LAW DICTIONARY (11th ed. 2019). When a state or federal agency fails to engage in its governmental function, cooperative federalism breaks down. In short, the CWA does not permit a "states first" approach where states are too lethargic to act or hostile to the CWA's goals and purposes.

Notably, Congress amended the CWA in 1987 to require regularly updated criteria because of its frustration that states were "failing to aggressively address toxics and that EPA was not using its oversight role to push the States to move more quickly and comprehensively." 57 Fed. Reg. at 60,852; *see also id.* (discussing legislative history of 1987 CWA amendments). And this is not the first time EPA has needed to invoke section 303(c)(4)(B) to force Washington to adopt toxics criteria since the 1987 amendments. As mentioned above, in 1992 EPA promulgated the NTR, whereby it acted *on its own* to set toxics criteria for recalcitrant states, including Washington, that had failed for more than a decade to adopt toxics criteria. *See*

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1   *generally*, 57 Fed. Reg. 60,848. In doing so, EPA said:

2
3           [I]t is important that EPA ensures timely compliance with CWA requirements. An
            active Federal role is essential to assist States in getting in place complete toxics
4           criteria as part of their pollution control programs. While most States recognize the
            need for enforceable water quality standards for toxic pollutants, their recent
5           adoption efforts have often been stymied by a variety of factors including limited
            resources, competing environmental priorities, and difficult scientific, policy and
6           legal challenges. . . . In such circumstances, it is EPA's responsibility to exercise
            its CWA authorities to move forward the toxic control program in concert with
7           the statutory scheme.

8   *Id.* at 60,849. These are some of the same excuses EPA offers now to explain Washington's

9   failure to comply with its CWA obligations. *See* EPA0008665–70. As EPA concluded with the

10  NTR, EPA now bears the responsibility to promulgate criteria for Washington.

11          Further, EPA ignores the fact that EPA's "important backstop responsibilities," *Gulf*

12  *Restoration Network*, 783 F.3d at 230–31, are as grounded in the language of the CWA as the

13  notion of state primacy. *See Columbia Riverkeeper v. Wheeler*, 944 F.3d 1204, 1209–10 (9th Cir.

14  2019) ("An interpretation of § 1313 that provides states and the EPA with the opportunity to

15  avoid their statutory obligations is incompatible with both the mechanics and purpose of the

16  entire [CWA].").[13] As EPA recognized when it promulgated the NTR, "EPA's ability to oversee

17  State standards-setting activities and to correct deficiencies in State water quality standards is

18  critical to the effective implementation of section 303(c)(2)(B)." 57 Fed. Reg. at 60,849.

19
20          EPA's "states first" rationale also ignores that Washington has abdicated its

21  responsibility to act first. *See supra*, Background Sections I–IV. In its Denial Letter, EPA points

22  to its 2015 regulation requiring states to explain, during triennial reviews, their decisions to not

23  adopt new or revised criteria for pollutants for which EPA has published new or revised 304(a)

24

25

26  [13] As *Columbia Riverkeeper* demonstrates, in a different CWA context that does not expressly require EPA action
    when states fail to comply with their CWA duties, courts have required EPA to act. 944 F.3d at 1208–09 (discussing
    Ninth Circuit and other circuit case law holding EPA has a duty to issue its own TMDLs in the face of state failure).

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax: (206) 264-9300

criteria as required by CWA section 303(c)(2)(B). EPA0008668 (citing 40 C.F.R. § 131.20(a)). But EPA ignores that Washington has failed to regularly review and update its criteria over the past 25 years, and that it has not conducted a triennial review since 2010. Indeed, EPA did not address the Petition request that EPA make a determination that Washington has failed to adopt aquatic life criteria as required by CWA section 303(c)(2)(B) in each triennial review since 1992. *See generally*, EPA0008665–70; *see also* EPA0000058–60.

EPA's denial of NWEA's Petition based on its preference for Washington to act first is belied by the lack of evidence in the record that Washington had any plans or intent to do so. EPA cites a single sentence to support the notion that Washington intended to review and update its aquatic life criteria soon. *See* EPA0008667 (citing Washington's 2015–2020 Strategic Plan); EPA0008774 (Strategic Plan, stating that prior to the next triennial review, Washington would "[u]pdate criteria: develop and adopt human health criteria (along with an integrated strategy) for mercury, for aquatic life, bacteria, and dissolved oxygen to protect spawning grounds"). The record contains no documentation between EPA and Washington regarding any Washington plans to review and update its criteria. Even for copper and ammonia, which EPA has encouraged Washington to update, EPA's Denial Letter states that Washington might prioritize other actions over updating those criteria. EPA0008668.

The CWA illustrates that Congress did not intend for EPA to sit on its hands, allowing a state to exempt itself from CWA requirements as Washington has done for decades. Yet EPA declines to do the work that Congress charged it to do. "[T]here is a point in time at which [EPA] will have abused its great discretion by refusing to concede that the current approach—albeit the one of first choice under the CWA—is simply not going to work." *Gulf Restoration Network v. Jackson*, 224 F. Supp.3d 470, 477 (E.D. La. 2016). Here, that point has long passed.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 22
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1

2

### 3.   EPA's reliance on Washington's human health criteria was unreasonable and not grounded in the CWA.

3

4       EPA also denied NWEA's Petition based on recent updates to Washington's human

health criteria. EPA0008667–69. EPA stated that "due to the state's extensive effort to update its

5   human health criteria and associated implementation provisions, Ecology has not yet initiated a

6   rulemaking to adopt new and revised aquatic life criteria." EPA0008667. EPA further stated that,

7   because "a substantial fraction" of Washington's recently-updated human health criteria are

8   more stringent than the State's outdated *aquatic* life criteria, "revising aquatic life criteria for the

9   same pollutants is unlikely to result in changes to water quality." EPA0008668. Neither of these

10  reasons is reasonable or grounded in the CWA.

11

12      First, EPA's rationale that human health criteria can stand in the place of updated aquatic

13  life criteria is contrary to the CWA which, as discussed above, requires states to adopt criteria to

14  protect all designated uses. There is no exception for where states or EPA assert, without

15  scientific basis, that criteria adequate to protect one use are adequate to protect other uses.

16

17      Second, EPA's Denial Letter cites no evidence or support for EPA's suggestion that

18  Washington could not have worked on updating its human health and aquatic life criteria at the

19  same time. *See* EPA00008665–70. Indeed, the record reveals that Washington intended to update

20  its human health and aquatic life criteria during the same time period. *See* EPA0008774

21  (Washington 2015-2020 Strategic Plan). Further, EPA expects states to undertake activities

22  related to their water quality programs simultaneously. *See* EPA0008783–86 (EPA guidance

23  establishing numerous recommendations for states to consider over two year period).

24      Third, EPA's claim that because Washington's human health criteria are more restrictive

25  than its aquatic life criteria, "revising aquatic life criteria for the same pollutants is unlikely to

26  result in changes to water quality," EPA0008668, is baseless, assumes the point at issue, and

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

EPA did not conduct analysis to support this statement. Aquatic life and human health criteria serve different functions: human health criteria protect *humans* from pollution in drinking water and fish they eat, whereas aquatic life criteria protect *aquatic species* from pollution. *See supra*, Background Section I. Pollutants may impact humans very differently than aquatic species and not all species are impacted in the same way. Unlike humans, aquatic species cannot escape day-in and day-out pollution exposures from the combined effects of toxic and conventional pollutants, and they consume many more aquatic organisms than humans, organisms which themselves are consistently exposed to water pollutants. The methods EPA and states use to develop human health and aquatic life criteria reflect these differences. *See* EPA0000699–706.

For these reasons, for many pollutants, aquatic species may require more stringent criteria than humans. Indeed, as EPA averred, "in certain instances an aquatic life criterion may need to be more stringent than a human health criterion for the same pollutant in order to protect aquatic species." EPA Answer, ¶55. For example, EPA recommends that copper criteria not exceed 1,300 micrograms per liter (μg/L) to protect human health, but that aquatic life criteria not exceed 4.8 μg/L to protect against acute effects to aquatic species in saltwater, and 3.1 μg/L to protect against chronic effects. *See* EPA0004384 (2013 304(a) copper aquatic life criteria) *with* EPA0004387 (2013 304(a) copper human health criteria). Because human health criteria are not intended to protect aquatic species, neither the state nor EPA reviews them to ensure they are adequate to protect aquatic species. EPA does not engage in ESA consultation with FWS or NMFS to ensure human health criteria will not jeopardize ESA-listed species. In short, Washington's new human health criteria do not obviate the need to review and update the aquatic life criteria. Aquatic species are not the same as humans. They need different criteria.

Fourth, for some toxics, Washington's updated human health criteria were less stringent

Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

than the corresponding aquatic life criteria, which are themselves outdated. *See* Comerford Dec., Ex. A (EPA0008800-1–4) (comparing Washington's aquatic life and human health criteria).[14] Similarly, there are many toxics hazardous to aquatic life for which Washington has *no* human health criteria. *See id.*[15] For these criteria, EPA's rationale that the aquatic life criteria do not need to be updated due to some more stringent human health criteria does not apply.

EPA attempts to gloss over this problem by focusing on Washington aquatic life criteria for which there are *both* less stringent human health criteria *and* more stringent 304(a) criteria. EPA0008668. But by focusing on criteria that fall within both categories, EPA ignores the need to update criteria that fall within only one category—e.g., outdated aquatic life criteria for which there are no more stringent corresponding human health criteria.

For the criteria that fall within both categories,[16] EPA merely "maintains that Washington should prioritize revisions to those criteria if those pollutants can be expected to interfere with the state's designated uses." EPA0008668. But NWEA provided information establishing that these pollutants *do* interfere with Washington's designated use of protecting aquatic species: as discussed above, the record is replete with evidence that toxic pollutants are present in Washington's waters in amounts that negatively impact Washington's aquatic species. *See supra*, Background Section III. EPA must actually evaluate that evidence and determine whether new or updated criteria are necessary to protect aquatic species.

Although EPA characterized its denial as not determining that new or revised criteria are not necessary, EPA0008670, if one looks behind the curtain, it is clear that EPA's rationales

---

[14] This included some aquatic life criteria for copper, cyanide, endosulfan, hexachlorocyclohexane (Lindane), mercury, selenium, nickel, and zinc.
[15] This included some criteria for, *inter alia*, ammonia, cadmium, copper, chromium VI, lead, and silver.
[16] According to EPA, at the time of the Petition denial this may have included some criteria for cadmium, chromium III, copper, selenium, and silver. EPA0008797.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 25
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

regarding human health and 304(a) criteria (discussed *infra*, Argument Section I.A.4) amounted to a determination that new or revised criteria were *not necessary*. *See, e.g.*, EPA0006796 (EPA memo, stating these rationales support denial because "in many instances," updating the criteria "would not increase protection of aquatic life from toxic pollutants"). *See City of San Diego v. Whitman*, 242 F.3d 1097, 1101 n.6 (9th Cir. 2001) (noting that an agency's characterization of its action is "not necessarily determinative," although it indicates the action's nature). Because these rationales were not reasonable, EPA's decision was arbitrary and capricious.

### 4.   EPA's reliance on its 304(a) criteria was unreasonable and not grounded in the CWA.

EPA's reliance on its 304(a) criteria was also unreasonable and not grounded in the CWA. First, EPA mentions updates to its 304(a) aquatic life criteria for ammonia (2013) and copper (2007) and its having encouraged Washington to update its criteria for these pollutants. EPA0008667–68. EPA considers five years "a reasonable time" for states to update their criteria based on new or revised 304(a) criteria. EPA0005173. At the time of the Petition Denial in May 2017, that period had long expired for Washington's copper criteria and had almost expired for the ammonia criteria. Further, EPA noted that Washington intends to or may focus on other updates instead of its copper and ammonia criteria. EPA0008668. And for copper, EPA implied, without basis, that it is reasonable for Washington to wait for Oregon and Idaho to finish their adoption of new copper criteria before beginning its own process. EPA0008668. As both copper and ammonia are implicated in jeopardizing ESA-species, the delay is even less rational. *See* Comerford Dec., Ex. A (EPA0008800-5).

Second, there are numerous other Washington criteria that are less stringent than EPA's 304(a) criteria. *See* Comerford Dec., Ex. A (EPA0008800-1–4) (noting in yellow criteria that

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 26
Case No. 20-cv-01362-MJP

Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

were less stringent than EPA's criteria at time Petition was denied).[17] The 304(a) criteria for many of these pollutants were last updated more than five years prior to EPA's May 2017 Petition denial.[18] The record establishes that many of these pollutants interfere with Washington's designated uses. *See, e.g.*, EPA0001065–1074 (EPA Washington Assessment Data for 2008, noting waters impaired for arsenic, cadmium, dieldrin, mercury, PCP, and silver).

Third, EPA incorrectly suggests that Washington's aquatic life criteria do not need to be updated if those criteria are more stringent than EPA's corresponding 304(a) criteria. EPA0008668. EPA's position ignores the CWA's requirement that the 304(a) criteria only serve as *recommendations*, and that even where a state intends to adopt the exact 304(a) criteria into its own regulations, the state must first ensure, based on science, that the criteria are adequate to protect designated uses. 40 C.F.R. § 131.11(a)(1). Here, there is no evidence in the record that Washington's more stringent criteria are sufficient simply because they exceed the 304(a) criteria. Nor is there any evidence that EPA evaluated this issue as part of its denial.

Fourth, EPA's reliance on the 304(a) criteria negates the importance of the ESA consultation process. FWS's and NMFS's jeopardy calls in Oregon and Idaho, discussed *supra*, Background Section III, were for criteria that *matched* EPA's 304(a) criteria. *Compare* Comerford Dec., Ex. A, EPA0008800-1–4 (Washington aquatic life criteria) *with id.* at EPA0008800-5 (Oregon and Idaho criteria jeopardy calls). In other words, FWS and NMFS determined that the 304(a) criteria were not sufficient to protect ESA-listed species in those

---

[17] This includes criteria for arsenic, cadmium, dieldrin, endrin, hexachlorocyclohexane (Lindane), mercury/methylmercury, nickel, PCP, and silver.

[18] *See* EPA, National Recommended Water Quality Criteria–Aquatic Life Criteria Table, *available at* https://www.epa.gov/wqc/national-recommended-water-quality-criteria-aquatic-life-criteria-table (last visited Aug. 18, 2021) (showing 304(a) criteria publication year). In addition, in a letter NWEA sent to EPA regarding the Petition, NWEA cited a Washington spreadsheet nothing that EPA expected Washington adopt its 2001 304(a) criteria for cadmium by 2006. EPA0008596. Washington has not done so. *Compare* WAC-173-201A-240, Table 240 (cadmium aquatic life freshwater criteria of 42 µg/L acute and 9.3 µg/L chronic) *with* EPA0004383 (EPA 304(a)(1) criteria in 2013, showing cadmium criteria (published in 2001) of 2.0 µg/L acute and 0.25 µg/L chronic).

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 27
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

states. EPA's reliance on the 304(a) criteria ignores the fact that those criteria may well jeopardize ESA-listed species in Washington, as they were found to do in Oregon and Idaho.

Last, Washington has no aquatic life criteria for acrolein despite EPA's having 304(a) criteria for acrolein since 2009. *See* WAC 173-201A-240, Table 240; EPA0004249 (EPA 2009 304(a) list); *see also* 33 U.S.C. § 1313(c)(2)(B) (requiring states to have criteria for all toxic pollutants listed pursuant to CWA section 1317(a)(1) that could interfere with designated uses); 40 C.F.R. § 401.15 (toxic pollutant list). EPA claims NWEA's Petition did not explain why acrolein could be expected to interfere with Washington's designated uses. EPA0008669. But the record establishes acrolein's toxicity to aquatic species, EPA0000130, and EPA recent approval of Washington's human health criteria for acrolein demonstrates EPA's awareness of the need for acrolein criteria. *See* EPA0008701 (chart showing EPA's approval of Washington's acrolein human health criteria). Further, EPA's NPDES Pesticide General Permit, which covers federal facilities in Washington, authorizes the discharge of acrolein. *See* 81 Fed. Reg. 75,816 (Oct. 31, 2016) (notice of permit issuance).[19] EPA's denial of NWEA's Petition without evaluating the need for acrolein criteria was arbitrary, capricious, and contrary to the CWA.

## II.   NWEA has standing to pursue its claim.

To establish standing, a plaintiff must show it has suffered an injury that is fairly traceable to the challenged action and likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Organizations may sue on behalf of its members when at least one member would have standing in their

---

[19] EPA, Pesticide General Permit (PGP) for Discharges From the Application of Pesticides, at 9-33 through 9-34, *available at* https://www.epa.gov/npdes/pesticide-permitting-2016-pgp (last visited Aug. 17, 2021) (authorizing entities covered by the PGP to discharge acrolein for irrigation system aquatic weed control). The Court can take judicial notice of this EPA document because the adjudicative facts are not subject to reasonable dispute and the source's accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

1   individual capacity, the suit is germane to the organization's purpose, and when only injunctive

2   relief is at issue. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

3        NWEA's standing is demonstrated by the member declarations submitted in support of

4   this motion, as well as the declaration of its Executive Director, Nina Bell. *See generally*

5   Declarations of Nina Bell, Harry Branch, R. Jerome White, Jr., and Greg Wingard. As discussed

6   in these declarations, this case is germane to NWEA's organizational purpose. NWEA members

7   use and enjoy Washington's waters and have significant interests in the ongoing existence and

8   protection of Washington's aquatic species. These members suffer injury due to the presence of

9   toxic pollutants in Washington's waters and those pollutants' impacts on aquatic species. EPA's

10   denial of NWEA's Petition injures their interests by delaying needed remedial measures to

11   reduce toxic pollution, improve water quality, and increase protections for aquatic species.

## III.   As a remedy, the Court should order EPA to vacate its Petition Denial and make a new decision on the Petition by a date certain.

15        If the Court grants NWEA's motion for summary judgment, it should "set aside," or

16   vacate EPA's denial of NWEA's Petition, which is the default remedy under the APA. 5 U.S.C.

17   § 706(2)(A); *Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181, 1185 (9th Cir. 2004).

18   Following vacatur, the Court should remand the Petition back to EPA for a new decision. *Defs.*

19   *of Wildlife v. EPA*, 420 F.3d 946, 978 (9th Cir. 2005), *rev'd on other grounds, Nat'l Ass'n of*

20   *Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007).

22        In addition, the Court should exercise its discretion to require EPA to make a new

23   decision on the Petition by date certain. *See Sierra Club v. EPA*, 346 F.3d 955, 963 (9th Cir.

24   2003) (nothing that both the Supreme Court and Ninth Circuit have "acknowledged the propriety

25   of remanding with instructions in exceptional cases" and citing cases). EPA must respond to

26   NWEA's Petition "within a reasonable amount of time." 5 U.S.C. § 555(b). But EPA's

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 29
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

opportunity to provide a legally adequate response in a timely fashion has long expired: NWEA submitted its Petition almost eight years ago, and NWEA had to sue EPA for failing to respond to the Petition within a reasonable amount of time, *see* EPA0008828–8964.

In the four years since EPA's denial, Washington has not adopted any new or revised aquatic life criteria, *see supra* n.5, despite EPA's Denial Letter suggesting Washington would be doing so soon. EPA0008665–70. In 2018, Washington identified the need to update its aquatic life standards for pollutants most harmful to endangered killer whales and their prey.[20] Since then, the situation has become more dire. In 2019, EPA took action to weaken many of Washington's recently-updated human health criteria. *See* 85 Fed. Reg. 28,494 (May 13, 2020). Washington challenged EPA's action, and that lawsuit is stayed pending EPA's reconsideration of its decision. *See* Comerford Dec. Ex. B (Order, *Washington v. EPA*, No. 2:19-CV-00884 (W.D. Wash. July 6, 2021)). This debacle underscores the need for aquatic life criteria that, on their own, are sufficient to protect aquatic life and meet the CWA's requirements. For these reasons, the Court should vacate the Petition denial and remand the Petition back to EPA for reconsideration and a new decision within 180 days of the Court's granting of Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, the Court should grant NWEA's motion for summary judgment, vacate EPA's denial of NWEA's Petition, and remand the Petition back to EPA to make a new decision on the Petition within 180 days of the Court's order.

DATED this 20th day of August, 2021.

Respectfully submitted,

---

[20] SOUTHERN RESIDENT ORCA TASK FORCE, REPORT AND RECOMMENDATIONS (Nov. 16, 2018), at 64, *available at* https://www.governor.wa.gov/sites/default/files/OrcaTaskForce_reportandrecommendations_11.16.18.pdf    (last visited Aug. 18, 2021). The Court can consider this and other post-decision facts because the issue of remedy is not limited to the administrative record. *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (holding that extra-record evidence may be submitted "in cases where relief is at issue").

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 30
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

EARTHRISE LAW CENTER

By:     s/ Lia Comerford
        Lia Comerford, WSBA No. 56447
        Lewis & Clark Law School
        10101 S. Terwilliger Blvd.
        Portland, OR 97219
        Telephone: (503) 768-6823
        Fax: (503) 768-6642
        E-mail:comerfordl@lclark.edu

BRICKLIN & NEWMAN, LLP

By:     s/ Bryan Telegin
        Bryan Telegin, WSBA No. 46686
        1424 Fourth Avenue, Suite 500
        Seattle, WA 98101
        Telephone: (206) 264-8600
        Fax: (206) 264-9300
        E-mail: telegin@bnd-law.com

*Counsel for Plaintiff Northwest Environmental Advocates*

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 31
Case No. 20-cv-01362-MJP

**Earthrise Law Center**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel. (503) 768-6823
Fax: (503) 768-6642

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300